NO. 23-1324

# United States Court of Appeals

*for the*

# Fourth Circuit

———————————

COMPASS MARKETING, INC.,

*Plaintiff-Appellant,*

– v. –

FLYWHEEL DIGITAL LLC; JAMES COLUMBUS DIPAULA, JR.;
PATRICK MILLER; DANIEL J. WHITE; MICHAEL WHITE;
GEORGE WHITE; ASCENTIAL PLC,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## BRIEF OF APPELLEES DANIEL J. WHITE, MICHAEL WHITE, AND GEORGE WHITE

BRUCE L. MARCUS
SYDNEY M. PATTERSON
MARCUSBONSIB, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
(301) 441-3000
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com
*Attorneys for Defendant-Appellee
Daniel J. White*

JEFFREY M. SCHWABER
JUDITH G. CORNWELL
STEIN SPERLING BENNETT DEJONG
    DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020
jcornwell@steinsperling.com
jschwaber@steinsperling.com
*Attorneys for Defendants-Appellees
    Michael White and George White*

CP COUNSEL PRESS      (800) 4-APPEAL • (809357)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _23-1324_    Caption: _Compass Marketing, Inc. v. Flywheel Digital, LLC, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Daniel White_
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:


- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                     ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Sydney M. Patterson                       Date:      4/14/23

Counsel for: Appellee Daniel White

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. ___23-1324___    Caption: ___Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.___

Pursuant to FRAP 26.1 and Local Rule 26.1,

___Michael White and George White___
(name of party/amicus)

_____

who is _____Appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Judith G. Cornwell                          Date:        4.14.23

Counsel for: Michael White and George White

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF THE CASE ....................................................................1

STANDARD OF REVIEW .........................................................................1

SUMMARY OF THE ARGUMENT ..........................................................1

ARGUMENT ...............................................................................................3

    I.    Compass Waived Any Argument that the Complaint Properly Pled a RICO Enterprise by Association-in-Fact ..................................3

    II.    The District Court Correctly Held That Compass Failed to Plead a RICO Enterprise .......................................................................6

        A.    Common Purpose .......................................................................8

        B.    Relationships Among Members of the Enterprise Functioning as a Continuing Unit .............................................13

        C.    Separateness of the Enterprise and the Pattern of Racketeering ...........................................................................15

    III.    There are No Alleged Facts that Demonstrate George White Engaged in a Pattern of Racketeering .............................................17

    IV.    The District Court Did Not Abuse Its Discretion by Denying Compass Leave to Amend ...............................................................19

CONCLUSION ..........................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................10

*Ball v. United States*,
  967 F.3d 1072 (10th Cir. 2020) ..................................................................5, 6

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995) ...........................................................................21

*Boyle v. United States,*
  556 U.S. 938 (2009)............................................................... 7, 8, 13, 15

*Browning v. Flexsteel Indus., Inc.*,
  955 F. Supp. 2d 900 (N.D. Ind. 2013)...........................................................11

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F. Supp. 2d 444 (S.D.N.Y. 2007) ...........................................................12

*Cedric Kushner Promotions Ltd. v. King,*
  533 U.S. 158 (2001)......................................................................................6, 7

*Chambers v. King Buick*, *LLC*,
  43 F. Supp. 3d 575 (2014) ........................................................... 7, 16

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ................................................... 19, 21

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013) ........................................................................12

*Foster v. Wintergreen Real Estate Co.*,
  363 Fed. Appx. 269 (4th Cir. 2010) ..............................................................17

*Gilbert v.*
  *United States Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  805 F. App'x 198 (4th Cir. 2020).....................................................................5

*Grant v. Shapiro & Burson, LLP,*
  871 F. Supp. 2d 462 (D. Md. 2013)...............................................................13

*Green v. AMF Bowling Centers, Inc.*,
  Civil Action No. ELH-19-1410, 2020 WL 6204297
  (D. Md. Oct. 21, 2020) ...............................................................................21

*Greer v. Gen. Dynamics Info. Tech., Inc.*,
  808 Fed. Appx. 191 (4th Cir. 2020) ........................................................4, 5

*Guaranteed Rate, Inc. v. Barr*,
  912 F. Supp. 2d 671 (N.D. Ill. 2012).........................................................12

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................................15

*In re Pieterse*,
  No. 20-17425-MCR, 2021 WL 2189188
  (Bankr. D. Md. May 28, 2021) ..................................................................17

*Maryland-National Capital Park and Planning Comm'n v. Boyle*,
  203 F. Supp. 2d 468 (D. Md. 2002)......................................................18, 19

*Mitchell Tracey v. First Am. Title Ins. Co.*,
  935 F. Supp. 2d 826 (D. Md. 2013)............................................................15

*New Beckley Min. Corp. v. Int'l Union*,
  18 F.3d 1161 (4th Cir. 1994) ................................................................1, 20

*Reeves v. Ernst & Young*,
  507 U.S. 170 (1993)...........................................................................12-13, 16

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
  615 F.3d 312 (4th Cir. 2010) ...............................................................17, 18

*United States v. Fiel*,
  35 F.3d 997 (4th Cir. 1994) .........................................................................7

*United States v. Palacios*,
  677 F.3d 234 (4th Cir. 2012) ......................................................................11

*United States v. Tillet*,
  763 F.2d 628 (4th Cir. 1985) ......................................................................16

*United States v. Turkette*,
  452 U.S. 576 (1981)................................................................................7, 8

**Statutes & Other Authorities:**

18 U.S.C. § 1961(1) ...................................................................18

18 U.S.C. § 1961(4) .....................................................................7

18 U.S.C. § 1961(5) ...................................................................18

18 U.S.C. § 1962(c) .....................................................................6

18 U.S.C. § 1962(d) .....................................................................6

Fed. R. Civ. P. 7(b) ....................................................................20

Fed. R. Civ. P. 15(a) ..................................................................20

S. Rep. No. 617, 91st Cong., 1st Sess. 76 (1969) .......................16

## STATEMENT OF THE CASE

Appellees, Daniel White, Michael White, and George White (together, the "Whites"), hereby adopt and incorporate by reference the Statement of the Case set forth in the brief filed on even date by Appellees, Flywheel Digital LLC, James Columbus DiPaula, Jr., Patrick Miller, and Ascential PLC (together, the "Flywheel Defendants").

## STANDARD OF REVIEW

This Court reviews the district court's decision not to allow Compass leave to amend its Complaint for abuse of discretion. *New Beckley Min. Corp. v. Int'l Union,* 18 F.3d 1161, 1164 (4th Cir. 1994).

## SUMMARY OF THE ARGUMENT

Compass alleged a single RICO count against all defendants in addition to a count for RICO conspiracy. To sustain this RICO claim it was incumbent upon Compass to plead a RICO enterprise comprised of all defendants. In attempting to demonstrate that it had satisfied this burden, Compass made abundantly clear before the district court that the RICO enterprise it purportedly alleges in the Complaint is Compass itself. The district court rejected this argument and noted that the Complaint does not allege Compass is the RICO enterprise, nor does it properly allege an association-in-fact enterprise because there is no allegation of collaboration

1

or agreement among all the defendants to engage in the pattern of racketeering conduct alleged. JA295.

Faced with the dispositively fatal flaw in its Complaint, Compass now abandons its argument that Compass itself is the RICO enterprise and argues for the first time on appeal that, instead, it properly pled an association-in-fact enterprise. Compass waived this argument and it should not be considered on appeal.

Even if considered, the RICO claim and RICO conspiracy claim would nevertheless fail because Compass failed to allege the three structural features of an association-in-fact required to support a RICO enterprise. Critically, there is no reading of the facts set forth in the Complaint that plausibly supports the allegation that an enterprise existed with all defendants as its members and operated with the purpose or relationships the law requires.

The district court further correctly found that even if Compass had sufficiently pled a RICO enterprise, its RICO claims against George White would fail because the alleged run-of-the-mill employment dispute between George White and Compass over the single act of a purported IT lockout do not qualify as a pattern of racketeering activity under the RICO statute.

Finally, Compass never asked the district court for leave to amend its Complaint as it related to the Whites. Moreover, Compass does not propose a single

fact which, even if it had sought and been granted leave to amend, would cure the fatal flaws in the Complaint and save Compass's RICO claims.

## ARGUMENT

### I. Compass Waived Any Argument that the Complaint Properly Pled a RICO Enterprise by Association-in-Fact.

Before the district court, Michael White and George White argued in their motion to dismiss that while the Complaint does not identify any specific enterprise among the Whites, Compass appeared to try to allege an association-in-fact enterprise, as opposed to a legal entity.[1] In Compass's consolidated opposition to the Whites' motions to dismiss, Compass disposed of any notion that the RICO enterprise pled in the Complaint was one established through association-in-fact.[2] Instead, Compass argued that "[t]he RICO enterprise alleged in the Complaint ***is Compass itself***." *Id.* (emphasis in original).

The district court found "Compass' willingness to implicate itself in a racketeering scheme" was "curious[,]" and further remarked that in making this self-incriminating argument, Compass had even "mischaracterize[d] the allegations in the Complaint." JA296. The district court held that the Complaint "only

---

[1] *See* SA10-11, Defendants Michael White and George White's Motion to Dismiss ("Motion to Dismiss"), at 11-12, ECF 41.

[2] *See* SA38, Response in Opposition to Motion to Dismiss of Defendants Daniel White, George White, and Michael White ("Opposition"), at 14, ECF 47.

substantively describes the RICO 'enterprise' as Flywheel, not Compass itself[, and] [n]owhere does Compass allege that it was the RICO enterprise through which the Whites operated." JA296.

Compass's declaration to the district court was unequivocal. As the district court noted, Compass made abundantly clear that *the* intended RICO enterprise it pled was "***Compass itself***." JA296. Before this Court, Compass not only abandons that argument but pretends it never happened. Incredibly, Compass now disingenuously suggests for the first time on appeal that the Complaint "pled sufficient facts to demonstrate a RICO association-in-fact enterprise" under Counts III and IV. Appellant's Brief ("Br.") at 40, 46-7. Even worse, Compass blames the district court for prematurely taking from the jury the question of whether an association-in-fact enterprise existed. *Id.* at 45.

Although this Court retains the discretion to address arguments not previously raised in the first instance before a lower tribunal, that discretion is exercised "sparingly." *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 Fed. Appx. 191, 195 (4th Cir. 2020). It is well-settled that "[a]bsent exceptional circumstances" this Court does not consider issues raised for the first time on appeal. *Id.* No exceptional circumstances exist here.

Like Compass in this case, the plaintiff in *Greer* appealed the grant of a motion to dismiss for failure to state a claim. 808 Fed. Appx. at 195. One of

plaintiff's claims, which alleged a violation of an Executive Order, was dismissed by the district court because the Executive Order lacked a private right of action. *Id.* at 194. On appeal, the plaintiff argued for the first time that his claim was actually one for common law deceit. *Id.* at 193-95. Finding no exceptional circumstances, this Court declined to address the newly raised argument noting that it "w[ould] not result in a miscarriage of justice." *Id.* (internal quotations omitted).[3] The circumstances here compel the same result.

It is fundamental to the very doctrine of preservation of issues for appeal that Compass cannot defend a motion to dismiss before the district court by affirmatively arguing that the RICO enterprise it alleges in the Complaint *"**is Compass itself**,"* and then when that argument fails, completely change course by advancing a contrary argument on appeal. *See Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms & Explosives*, 805 F. App'x 198, 203 (4th Cir. 2020) ("If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court."); *accord Ball v. United States*, 967 F.3d 1072, 1078 (10th Cir. 2020). ("The proceedings in district court are not just a rehearsal, a dry run, for the ultimate performance on appeal, where the parties can discard what did not work below and introduce new scenes for

---

[3] All internal citations and quotation marks are omitted throughout unless otherwise stated.

a new audience."). Compass has not identified anything remotely exceptional about the circumstances in this case that would justify a departure from this Court's well-established practice of declining to consider arguments raised for the first time on appeal. To allow this sort of litigation tactic to prevail *would be* a miscarriage of justice and contrary to the interests of judicial economy. *See Ball*, 967 F.3d at 1078 ("In fairness to opposing parties and to prevent further burden on overburdened courts caused by interminable litigation, we expect parties 'to give it everything they've got at the trial level.'").

## II. The District Court Correctly Held That Compass Failed to Plead a RICO Enterprise.

Compass alleged a single civil RICO claim and RICO conspiracy claim against all defendants. 18 U.S.C. §§ 1962(c), 1962(d). To sustain these claims, it was incumbent upon Compass to plead a RICO enterprise comprised of all defendants. The district court correctly found that Compass failed to adequately allege the existence of such an "enterprise."

For purposes of a RICO claim under § 1962(c), a plaintiff must demonstrate injury in his property or business that stems from a pattern of racketeering activity through which the defendant commits criminal acts by conducting or participating in the conduct of the affairs of any "enterprise" engaged in interstate or foreign commerce. *See* 18 U.S.C. §§ 1962(c); *Cedric Kushner Promotions Ltd. v. King,* 533 U.S. 158, 161 (2001). A RICO conspiracy claim requires that the plaintiff allege

6

and prove that a RICO enterprise existed; that the defendant agreed to conduct or participate in the affairs of the enterprise; and knew and agreed that another member of the enterprise would commit at least two or more acts of racketeering. *Chambers v. King Buick, LLC*, 43 F. Supp. 3d 575, 607–08 (2014).

To establish the "enterprise" requirement, the plaintiff must show "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric,* 533 U.S. at 161. A RICO enterprise is characterized by "continuity, unity, shared purpose, and identifiable structure." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994). An "enterprise" within the purview of RICO encompasses two types of organizations: "legal entities" such as partnerships, corporations, or associations, and "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576, 581–82 (1981).

On appeal, Compass, for the very first time, accuses Appellees of involvement with an association-in-fact enterprise, which is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States,* 556 U.S. 938, 946 (2009). An association-in-fact enterprise can exist without formal structural elements like a chain of command. *See id.* at 947-48. Nevertheless, "[t]he 'enterprise' is not the 'pattern of racketeering activity'" and "proof of one does not necessarily establish the other." *Turkette*, 452 U.S. at 583. Rather, "it is an

7

entity separate and apart from the pattern of racketeering activity in which it engages" and its separate existence must be alleged and proven. *Griffin*, 660 F.2d at 999 (quoting *Turkette*, 452 U.S. at 583). To adequately plead the existence of an association-in-fact RICO enterprise, a plaintiff must demonstrate "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

Here, Compass failed to adequately plead an association-in-fact enterprise because the Complaint does not sufficiently allege the three structural features critical to support a RICO enterprise allegation. Significantly, no reading of the facts alleged in the Complaint can support a finding that an enterprise operated with the purpose or relationships the law requires.  Instead, the Complaint is best read to allege that the individual defendants and entities engaged in independent conduct for different purposes, even assuming they all shared a generalized motive to harm Compass.

### A.    Common Purpose.

Where, as here, the RICO enterprise charged is an association-in-fact, this Court has recognized that "the purpose of the association, along with the composition of the group," is essential to plead and prove such entity's "separate"

existence, as it is "only in these two dimensions that such an entity would seem to have any discrete existence." *Griffin*, 660 F.2d at 999.

Here, Compass alleged that the Whites "share[d] a common purpose of harming Compass to hide the impropriety of their corporate spending for personal financial gain." JA74 ¶ 254. The Flywheel Defendants are alleged to "share the common purpose of using Compass [sic] stolen trade secrets, proprietary business know how, and confidential information for economic gain." JA74 ¶ 250. According to Compass, these separate enterprises joined to form the RICO enterprise with the common purpose of "using Compass's trade secrets and other confidential business information to harm Compass." Br. at 43 n.11. Distilled to its essence, the RICO claim attempts to create an association-in-fact of two groups of defendants who allegedly committed separate acts which separately harmed Compass. Compass thus confuses the *result* of the alleged acts of racketeering with the *common purpose* of the association-in-fact. Compass does so despite specifically alleging the contrary: namely, that each group of defendants committed the alleged acts of racketeering with a different purpose. To be clear, as alleged, the specific purpose of the Flywheel Defendants was to obtain a competitive advantage over Compass in the marketplace, while the Whites' specific purpose was personal financial gain. JA74 ¶¶ 250, 254.

The Complaint is devoid of any allegations of fact to support the conclusory statement that the Whites shared a common purpose of causing competitive

economic harm to Compass, their employer at the time. It is simply not enough to assert that the Whites acted in furtherance of a purpose completely against their interests without any allegations of fact to support the same.[4] Compass did not allege any well-pled facts to support the existence of an agreement or collaboration with the Flywheel Defendants to steal trade secrets or any promise of remuneration to the Whites in exchange for committing unlawful acts and jeopardizing their own employment, the future of their employer and family company.  These allegations are contrary to logic and unsupported by well-pled facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Here, the predicate acts allegedly committed by each group of defendants do not give rise to even an inference of a common purpose among all defendants. This case is thus distinguishable from *Griffin,* where the evidence showed that the defendants had paid bribes to law enforcement to obtain favorable treatment for their

---

[4] The allegations that the Whites used and relied on Compass funds to personally enrich themselves over a period of years is at odds with the allegation that they shared a common purpose with the Flywheel Defendants of sharing trade secrets with Compass's main competitor, thereby jeopardizing the potential future earnings of Compass and the funds available to allegedly misappropriate to their own individual uses. Compass makes no attempt to reconcile this inconsistency between the "common purpose" of the alleged RICO enterprise and the detailed allegations in the Complaint which describe Daniel White and Michael White acting in furtherance of a single goal to steal from Compass for their own personal gain.

respective gambling operations. 660 F.2d at 997–98. This Court "concede[d] the question to be a close one" but concluded that an enterprise existed because the defendants shared a common purpose of protecting illegal gambling operations in Baltimore, Maryland that was distinct from, and yet served by, each of the predicate acts of bribery. *See id.* at 1000–01; *accord Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 913 (N.D. Ind. 2013) (holding that a RICO enterprise exists only if the "shared interests" of enterprise members are "truly common interests, rather than parallel interests").

Nor is this a case where the allegations demonstrate that the predicate acts alleged are necessary steps toward a larger goal shared by members of the alleged enterprise. In *United States v. Palacios*, 677 F.3d 234 (4th Cir. 2012), for example, the evidence showed that the members of the enterprise, the MS-13 gang, shared the common purpose of "establishing and maintaining a reputation for violence" in order to protect individual members. *Id.* at 249. This common purpose was distinct from the predicate acts of "committing violent crimes" and the use of firearms. *Id.*

Here, Compass has alleged nothing more than that the separate predicate acts of each group of defendants had similar results in that they generally harmed Compass, albeit in separate and distinct ways. As to the Whites, the Complaint failed to allege any common purpose among them distinct from the alleged predicate acts of misappropriating funds for personal use. The mere allegation that the Whites

misappropriated corporate funds for personal financial gain does not demonstrate the existence of an enterprise even among the Whites, much less the alleged RICO enterprise comprised of all defendants.

The Complaint's description of the Whites' purposes is indistinguishable from the alleged predicate acts. Courts routinely reject such RICO claims where, as here, the Complaint fails to identify a common purpose other than committing predicate acts. *See, e.g.*, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (affirming dismissal of complaint that alleged only "that the members of the enterprise associated together for the common purpose of employing" the fraudulent practices alleged as predicate acts); *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 687 (N.D. Ill. 2012) (complaint did not allege association-in-fact enterprise when it failed to "present a single factual claim asserting the RICO Defendants had any interest in the outcome of the alleged scheme beyond their own individual interests" in the predicate acts of mail and wire fraud); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007) (dismissing complaint that "simply groups together all of the individuals and entities involved in the racketeering acts and calls them an enterprise").

Even if Compass had identified a common purpose other than committing predicate acts, the Complaint does not adequately plead that the Whites conducted the enterprise's affairs rather than their own affairs. *Reeves v. Ernst & Young*, 507

12

U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."). Of the predicate acts of misappropriation alleged against Daniel and Michael White, none involved the Flywheel Defendants who Compass alleges were part of the supposed association-in-fact enterprise. Instead, the allegations in the Complaint indicate that the purported participants in the enterprise pursued their own affairs. JA74 ¶¶ 250, 254. When a Complaint "alleges only that the RICO persons joined together for the purposes of conducting their own affairs[,]" it does not sufficiently allege a RICO enterprise distinct from defendants. *Reeves*, 507 U.S. at 185.

### B. Relationships Among Members of the Enterprise Functioning as a Continuing Unit.

An association-in-fact must function as a continuing unit and exhibit "relationships among those associated with the enterprise." *Boyle*, 556 U.S. at 946. With regard to the relationships among those associated with the enterprise, the Complaint fails to allege facts or specific allegations regarding the relationships between any of the Flywheel Defendants, on one hand, and any of the Whites on the other hand, much less "how they function[ed] as a continuing unit" for a common purpose. *Grant v. Shapiro & Burson, LLP,* 871 F. Supp. 2d 462, 473 (D. Md. 2013) (dismissing RICO complaint that lacked factual allegations regarding the relationships among defendants and how they functioned as a unit).

13

The only relationship Compass alleges among the members of the alleged RICO enterprise is that all individual defendants were employed by Compass during a limited period of time from on or about 2010 to September 2014, when DiPaula and Miller left Compass. JA30–33, JA35, JA39, JA43–44. Subsequent to 2014, Compass does not allege any ongoing interpersonal relationship, collaboration, agreement, or communication between the Whites and the individual defendants DiPaula and Miller.

The sole allegation connecting any of the Whites and any of the Flywheel Defendants after 2014 is an allegation that Daniel White wrote two checks to DiPaula for a total of $35,000. JA63–64 ¶¶ 203, 205. Although Compass alleges that these funds went to support the funding and operation of Flywheel, the Complaint sets forth no well-pled facts to support this conclusory statement. JA65 ¶ 207. This so-called "severance payment scheme" alleged by Compass is the single allegation in the Complaint which attempts to show any connection between the alleged predicate activities of the two groups of defendants. No other fact alleged by Compass suggests any coordination, collaboration, or agreement among the alleged members of the enterprise.

Compass's mere allegations that the Whites were employed by Compass at the same time as DiPaula and Miller, and that all were engaged in predicate acts of racketeering is insufficient to establish the existence of an enterprise among all

14

defendants. The allegations are likewise insufficient even to demonstrate an enterprise consisting solely of the Whites. A RICO enterprise requires the existence of collaboration or agreement between the members of the enterprise and allegations that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates" is "not [] enough to show that individuals were members of an enterprise." *Boyle*, 556 U.S. at 947 n.4 (2009); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) (stating that to satisfy the RICO enterprise element plaintiffs must "allege something more than the fact that individuals were engaged in the same type of illicit conduct during the same time period").

The Complaint lacks well-pled allegations of fact regarding an ongoing relationship, collaboration, or agreement among the defendants at any time, and the district court correctly found the allegations insufficient to support the existence of an alleged RICO enterprise among all defendants. Such "vague allegations of a RICO enterprise . . . lacking any distinct existence and structure will not survive dismissal." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013).

### C.    Separateness of the Enterprise and the Pattern of Racketeering.

Finally, Compass fails to allege an enterprise that exists separately and apart from the alleged pattern of racketeering activity. In the district court, Compass

attempted to make up for this failure by alleging, in its oppositions to the motions to dismiss, that the RICO enterprise alleged in the Complaint was "Compass itself" which also existed for the legitimate purpose of providing marketing and consulting services. This argument failed and Compass has now fully abandoned it. Having done so, it further abandoned any conceivable hook upon which it could have hung an argument that there was an enterprise existing separately from the alleged racketeering activity.

A primary purpose of the RICO statute was to eliminate the "infiltration of organized crime and racketeering into legitimate organizations." *Reeves,* 507 U.S. at 185 (quoting S. Rep. No. 617, 91st Cong., 1st Sess. 76 (1969)). As a result, Courts have allowed RICO actions to proceed where the complaint plausibly alleges that the members of the enterprise are collectively engaged in legitimate business during the same period of time for the purpose of concealing their illegal enterprise. *See, e.g.*, *United States v. Tillet*, 763 F.2d 628, 632 (4th Cir. 1985) (narcotics trafficking enterprise existed separate and apart from its illegal activity because it also ran a "legitimate business front", *i.e.,* a seafood restaurant, "for the smuggling operation"); *Chambers,* 43 F. Supp. 575, 592 (D. Md. 2014) (plaintiff adequately pled an enterprise comprised of a used car dealer and associated companies that illegally sold vehicles without disclosing their prior use as short-term rentals that

16

had "an existence separate and apart from its pattern of racketeering activity because it was also engaged in legitimate vehicle sales transactions.").

Although the defendants engage in legitimate business activities *individually*, Compass does not allege that they did so in association together with the other members of the alleged "enterprise" on an ongoing and continuous basis. The Complaint contains no allegation that the alleged enterprise had any existence whatsoever beyond that which was necessary to commit the predicate acts. Accordingly, Compass failed to adequately allege the existence of a RICO enterprise.

## III. There are No Alleged Facts that Demonstrate George White Engaged in a Pattern of Racketeering.[5]

"A civil RICO claim is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). Because the penalties

---

[5] Compass mistakenly interprets the district court's silence to mean that the district court agreed the Complaint pled a pattern of racketeering activity against Daniel White and/or Michael White. However, courts need not address additional elements of a claim when, like here, the absence of one alone is dispositive. *See In re Pieterse*, No. 20-17425-MCR, 2021 WL 2189188, at *13 (Bankr. D. Md. May 28, 2021).

In any event, review of the claims against Daniel and Michael White does not reveal a pattern of racketeering activity made up of separate schemes with multiple putative victims and multiple distinct injuries. Rather, it depicts nothing more than a "garden variety" dispute among brothers about the use of their family-run company's funds, which will not sustain a RICO claim. *See, e.g.*, *Foster v. Wintergreen Real Estate Co.*, 363 Fed. Appx. 269, 273 (4th Cir. 2010).

under the civil RICO statute are considered "drastic," "RICO liability is reserved for cases involving ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.*

To this end, to sustain a RICO claim, a plaintiff must plead a "pattern of racketeering activity," which "requires at least two acts of racketeering activity." 18 U.S.C. §§ 1961(1), (5). This Circuit does not lightly permit ordinary business contract disputes or other disputes arising in the ordinary run of an employment context to be transformed into federal RICO claims. *See, e.g.*, *Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp. 2d 468, 477 (D. Md. 2002). This is precisely what Compass tries to do here.

On appeal, Compass argues that George White's alleged IT lockout somehow in its own right constitutes a "pattern" because Compass got locked out of more than one business record or account.[6] Br. at 48–49. However, nothing in the Complaint suggests that this purported IT lockout could not or did not occur on a single day with one fell swoop. Regardless, even assuming it takes more than one click of a button to accomplish an IT lockout, this ordinary dispute between an employer and

---

[6] Compass wisely abandons its allegation below that George White extorted Compass by asking for a raise. To the extent Compass accuses George White on appeal of "fraudulent spoliation" (whatever that is), Br. at 49, this allegation is not in the Complaint. *See* JA51-54. In any event, assuming, arguendo, it was true for purposes of this appeal, this type of conduct perhaps would implicate the discovery rules but would have nothing to do with the Federal RICO statute.

an employee does not "resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties," *Flip Mortg. Corp.,* 841 F.2d at 538; *Boyle*, 203 F. Supp. 2d at 477. Even the authority cited by Compass makes this point clear. *See* Br. at 48 (relying on inapposite authority describing widespread and complex fraud schemes).

## IV.    The District Court Did Not Abuse Its Discretion by Denying Compass Leave to Amend.

Compass disingenuously argues the district court erred by granting the Whites' motions to dismiss "with prejudice and without any opportunity to amend (despite Compass's request for such leave)." Br. at 3. However, Compass *never* asked the district court for leave to amend its allegations against the Whites.[7] *See* Opp'n at 14, ECF 47.[8] Therefore, the district court's purported "refusal" to grant relief not requested cannot conceivably constitute an abuse of discretion. *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (affirming denial of leave to amend where plaintiff's request appeared in a footnote in the opposition to a motion to dismiss).

---

[7] Compass only expressly requested leave to amend in its opposition to the Flywheel Defendants' motion to dismiss. JA258. Compass's only mention of leave to amend as it related to the Whites was included in the proposed order filed with the Opposition.

[8] SA38.

Furthermore, to the extent Compass could prevail on its suggestion that its inclusion of a check-the-box option in a proposed order qualifies as a proper motion for leave to amend under Fed. R. Civ. P. 7(b) and 15(a), *see id.,* "[a] court may refuse to allow leave to amend pleadings when the proposed changes would be futile." *New Beckley Min. Corp.*, 18 F.3d at 1164 (affirming denial of leave to amend where proposed amendment still failed to plead a RICO enterprise). Compass did not proffer to the district court, nor has it proffered to this Court, what allegations it could "expound upon" in the already 372-paragraph Complaint to sufficiently plead the "enterprise" element of RICO. *See* Br. at 49-51. Compass cannot avoid the futility of a proposed amendment simply by not proposing anything at all. In any event, any proposal would be futile. Nowhere in its brief does Compass dispute the district court's correct finding that neither Compass nor Flywheel is the enterprise, and Compass conceded below that the Whites did not act through an association-in-fact enterprise. *See* Opp'n at 14, ECF 47.[9] Thus, the RICO claims are unsalvageable.

Compass's argument rings equally hollow with regard to how it could cure its failure to allege that George White engaged in a pattern of racketeering activity. Again, rather than identify a single purported fact it would add with an amendment, Compass simply declares it "should be given leave to amend to include additional

---

[9] SA38.

facts" about "George [Whites]'s participation in the enterprise." Br. at 51. This falls far short of the prerequisite hurdle to be jumped by Compass at this stage.

Neither of these ill-conceived arguments plausibly demonstrate an abuse of discretion.[10] *See Cozzarelli,* 549 F.3d at 630-31; *see also Green v. AMF Bowling Centers, Inc.*, Civil Action No. ELH-19-1410, 2020 WL 6204297, at *5 (D. Md. Oct. 21, 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)) ("[A] district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.")).

## CONCLUSION

In conclusion, the allegations in the Complaint, even when viewed in the light most favorable to Compass, do not plausibly set forth facts sufficient to find a RICO enterprise. This Court should affirm the decision of the district court.

---

[10] Compass does not cite a single decision where any appellate court held the district court abused its discretion in denying a plaintiff's request for leave to amend. *See* Br. at 50-51.

Respectfully submitted,

STEIN SPERLING BENNETT DE JONG DRISCOLL PC

*/s/ Jeffrey M. Schwaber*
Jeffrey M. Schwaber (Bar No. 06095)

*/s/ Judith G. Cornwell*
Judith G. Cornwell (Bar No. 20777)

1101 Wooton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020
(301) 354-8131 (facsimile)
jschwaber@steinsperling.com
jcornwell@steinsperling.com

*Counsel for Michael White and George White*

MARCUSBONSIB, LLC

*/s/ Bruce L. Marcus*
Bruce L. Marcus (Bar No. 06341)

*/s/ Sydney M. Patterson*
Sydney M. Patterson (Bar No. 19036)

6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
(301) 441-3000
(301) 441-3003 (facsimile)
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com

*Counsel for Daniel White*

**CERTIFICATE OF COMPLIANCE
WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

We, Judith G. Cornwell and Sydney M. Patterson, counsel for Appellees, Michael White and George White, and Daniel White, respectively, and members of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Brief of the Whites is proportionately spaced, has a typeface of 14 points of more, and contains <u>4971</u> words.[11]

/s/ Judith G. Cornwell

/s/ Sydney M. Patterson

Judith G. Cornwell

Sydney M. Patterson

---

[11] This Court granted the Appellees' joint consent motion to file separate briefing. The Appellees collectively agreed to allocate 5,000 of the total permitted 13,000-word count to the Whites and 8,000 to the Flywheel Defendants.