NO. 23-1324

# United States Court of Appeals

*for the*

# Fourth Circuit

---

COMPASS MARKETING, INC.,

*Plaintiff-Appellant,*

– v. –

FLYWHEEL DIGITAL LLC; JAMES COLUMBUS DIPAULA, JR.;
PATRICK MILLER; DANIEL J. WHITE; MICHAEL WHITE;
GEORGE WHITE; ASCENTIAL PLC,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## SUPPLEMENTAL APPENDIX OF DANIEL J. WHITE, MICHAEL WHITE, AND GEORGE WHITE

BRUCE L. MARCUS
SYDNEY M. PATTERSON
MARCUSBONSIB, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
(301) 441-3000
bmarcus@marcusbonsib.com
spatterson@marcusbonsib.com
*Attorneys for Defendant-Appellee
Daniel J. White*

JEFFREY M. SCHWABER
JUDITH G. CORNWELL
STEIN SPERLING BENNETT DEJONG
   DRISCOLL PC
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 340-2020
jcornwell@steinsperling.com
jschwaber@steinsperling.com
*Attorneys for Defendants-Appellees
   Michael White and George White*

# TABLE OF CONTENTS

Defendants Michael White and George White's Motion to Dismiss
     Filed April 25, 2022 ...................................................................... SA1

Response in Opposition to Motions to Dismiss of Defendants Daniel White,
George White, and Michael White
     Filed May 16, 2022 ...................................................................... SA19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

COMPASS MARKETING, INC.   :
            :
   Plaintiff      :
            :
   v.         :   Civil Action No. 1:22-CV-00379
            :   Judge George Levi Russell, III
FLYWHEEL DIGITAL, LLC, *et al.*  :
            :
   Defendants     :

**DEFENDANTS MICHAEL WHITE AND GEORGE WHITE'S MOTION TO DISMISS**

   Defendants Michael White and George White, by and through counsel, Jeffrey M. Schwaber, Judith G. Cornwell, and Stein Sperling Bennett De Jong Driscoll PC, hereby file this Motion to Dismiss Plaintiff's Complaint and respectfully move for an order dismissing with prejudice all claims asserted against Michael White and all claims but Count XXII asserted against George White.  In support their Motion to Dismiss, Michael White and George White refer to the arguments set forth in the attached Memorandum of Law in Support of the Motion to Dismiss, which is incorporated herein by reference.

1

8849184_2

SA1

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC


_____/s/ Jeffrey M. Schwaber_____
Jeffrey M. Schwaber (Bar ID 06095)
jschwaber@steinsperling.com
Judith G. Cornwell (Bar ID 20777)
jcornwell@steinsperling.com
(301) 354-8131 (facsimile)
1101 Wootton Parkway, Suite 700
(301) 340-2020

*Attorneys for Michael White and George White*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 25th day of April, 2022, copies of the foregoing

Motion to Dismiss and supporting memorandum of law were electronically filed and served on

all counsel of record via CM/ECF.


____/s/ *Jeffrey M. Schwaber*_____
Jeffrey M. Schwaber

2

8849184_2

SA2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| COMPASS MARKETING, INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 1:22-CV-00379 |
| | : | Judge George Levi Russell, III |
| FLYWHEEL DIGITAL, LLC, *et al.* | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MICHAEL WHITE AND**
**GEORGE WHITE'S MOTION TO DISMISS**

Defendants, Michael White ("Michael") and George White ("George"), (together, "Defendants"),[1] by their undersigned counsel, Jeffrey M. Schwaber, Judith G. Cornwell, and Stein Sperling Bennett De Jong Driscoll PC, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submit this Memorandum of Law in support of their Motion to Dismiss all Counts of the Complaint filed by Compass Marketing, Inc. ("Compass") against Michael, and all Counts other than Count XXII (Conversion) against George.[2] In support thereof, Defendants state as follows:

---

[1] The "White Defendants" will be used herein when collectively referencing Michael, George, and co-defendant, Daniel White. The "Flywheel Defendants" will be used herein when collectively referring to Flywheel Digital, LLC, James Columbus ("Chip") DiPaula, Jr., and Patrick Miller.

[2] Defendants deny that Compass had the authority to initiate this litigation in the first place, as John White does not hold a majority of Compass stock and had no authority to purport to appoint a board, or in turn, to have his "board" purport to authorize a lawsuit. There is a wealth of documentary evidence that demonstrates John White's repeated and sworn admission—whenever convenient to him—that he does not own a controlling interest in Compass.

4

SA3

### INTRODUCTION

Through 372 paragraphs spanning 80 pages, John White purports to decree himself the controlling shareholder of Compass, and to use his hijacked and self-declared control to sue his brothers, among others, purportedly on behalf of Compass, and apparently in revenge for his brothers' reporting of John's misconduct to the Securities and Exchange Commission and the Federal Bureau of Investigation. Through its disjointed harangue, the suit against his brothers fails to state any timely and/or justiciable claims under Maryland law. On behalf of defendant Michael, this motion seeks to dismiss all claims against him. While not yet ripe for disposition, John White's single remaining claim against his nephew, George, is as specious as it is petty, but will be addressed and disposed of in due course.

### ARGUMENT [3]

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must allege enough facts to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In assessing the sufficiency of a complaint, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only well-pled allegations of fact must be accepted and viewed in the light most favorable to the plaintiff. *Howell v. State Farm Ins. Co.*, 448 F. Supp. 2d 676, 678 (D. Md. 2006) (citations

---

Defendants intend to take discovery on this dispositive defense and hereby reserve all rights in this regard.

[3] Defendants assume, as they must, the truth of the facts asserted in the Complaint for purposes of this Motion only. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted) ("A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint,

8849184_2

SA4

omitted); *Concerned Citizens of Carderock v. Hubbard*, 84 F. Supp. 2d 668, 670 (D. Md. 2000). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679. When the complaint suffers from "either a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory[,]" a motion to dismiss will be granted. *Popovic v. United States*, 997 F. Supp. 672, 676 (D. Md. 1998); *see Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 754 (4th Cir. 2014).

Furthermore, fraud and civil RICO claims implicate the heightened pleading standard under Federal Rule of Civil Procedure 9(b). The rule states that: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud…." Under Rule 9(b), a party alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

---

considered with the assumption that the facts alleged are true."). Moreover, all internal quotations, citations, and/or alternations have been omitted unless otherwise stated.

8849184_2

SA5

## I.    CERTAIN CLAIMS ARE TIME-BARRED

Claims filed beyond the statute of limitations period generally are time-barred. Thus, "when the face of the complaint includes all necessary facts for the defense to prevail," statute of limitations "is an affirmative defense that can [be] raise[d] in a motion to dismiss." *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F. 3d 573, 577 (4th Cir. 2017). Here, the very facts alleged in Compass's pleading demonstrate that the applicable statutes of limitations present a dispositive bar to almost all its claims asserted therein.

A.    <u>Compass's Federal RICO Claims Against Michael That Predate February 14, 2018 Are Time Barred (Count III & IV).</u>

Counts III and IV are private RICO claims and, as such, are governed by a four-year statute of limitations period. *Potomac Elec. Power Co. v. Elec. Motor and Supply, Inc.*, 262 F.3d 260, 266 (2001). Under Fourth Circuit law, a private RICO claim accrues "from the date when the plaintiff discovered, or should have discovered, the injury." *Id.* A plaintiff cannot "bootstrap time-barred claims by linking them to later, non-time-barred claims." *Id.* (relying on *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 183 (1997)).

Here, Compass alleges that Michael, who worked alongside his plaintiff brother for decades, "engaged in a pattern of egregious behavior" as early as 1998, which constituted the requisite RICO predicate acts. Specifically, the Complaint alleges:[4] (i) ***from 2008 to 2018***, Michael operated the "Secret Compass Bank Account Scheme" until he allegedly drained the

---

[4] Compass's naked accusation that Michael assisted George in a purported informational technology lockout in April 2019 seems to be based entirely upon the ***unreasonable*** inference

accounts when he purportedly was terminated in November 2018 (*see* Complaint ("Compl.") ¶¶ 94 and 99-107); (ii) *from 1998* to 2019, Michael enrolled his and Daniel's family members and friends in the Compass payroll as part of the "Ghost Employee Scheme" (*see id.* ¶¶108-18); (iii) *from 2015* to 2018, Michael facilitated the "IRS Tax Check Scheme" (*see id.* ¶119-25); (iv) *from April 2, 2014* until January 24, 2019, Michael directed the "Shareholder Loan Scheme" (*see id.* ¶¶ 126-43); (v) *between 2012* and 2019, Michael used an unauthorized company credit card to cover almost one million dollars in personal expenses for which he never reimbursed Compass (*see id.* ¶¶ 171-82); (vii) *on December 1, 2015*, Michael wrote a Compass check to Daniel for $65,000 for "'Final Payments to James DiPaula and Patrick Miller'"[5] (*see id.* ¶ 204).

Compass filed the Complaint on February 14, 2022. As such, any of these purported predicate acts by Michael to divert company funds prior to February 14, 2018 fall outside the four-year statute. Where this is the case, "fraudulent concealment of the predicate acts *and due diligence* on the part of the plaintiff *must be pled* to toll the running of the statute." *Montuoro v. Samson*, Nos. 93-1013, 93-1025, 993 F.2d 1538, at *1 (emphasis added) (relying on *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987)).

---

that because George is Michael's son, any alleged conduct by George somehow gets imputed to Michael.
[5] At a minimum, any RICO claim is time-barred which attempts to link together Michael and George with the Flywheel Defendants and Ascential with a single check written in 2015. *See* Compl. ¶¶ 202-08. The notion is incredible that a check written on the Compass account in 2015 expressly earmarked as "Final Payments to James DiPaula and Patrick Miller" was undiscoverable through even the slightest due diligence. *See Montuoro* 993 F.2d 1538, at *1, *infra.*

8

Compass does not—because it cannot—allege in the Complaint that this purported widespread and decades long RICO scheme was undiscoverable with reasonable diligence through Compass's financial and accounting records, or otherwise. In fact, presuming the alleged facts to be true, John White permitted *for over 20 years*—the last eight of which he served as the Compass's CEO (*see* Compl. ¶ 92)—Michael to remove multiple millions of company dollars through company bank accounts, company credit cards, company payroll, and company loans. During this more than two-decade period, as alleged, under John's leadership and watchful eye, the company was filing tax returns, dealing with outside investors and transacting business. If nothing else, this alone demonstrates the opposite of any "due diligence [done] on the part of [Compass]" who, again, has had at its helm John White as "Chairman/CEO" since at least 2014 (*see id.*). John White is the sole Compass stockholder directing this litigation. Therefore, all claims which predate February 14, 2018 must be dismissed with prejudice. *See Montuoro*, 993 F.2d at *1.

B.    <u>Compass's Remaining State Law Claims Against Michael are Time-Barred.</u>

Md. Code Ann., Cts. & Jud. Proc. § 5-101 provides that "[a] civil action at law shall be filed within three years from the date it accrues," which is the date "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 96 (2000). Even where a "confidential or fiduciary relationship exists between the parties[,]" "blind ignorance of wrongdoing by the fiduciary" will not toll the statute. *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 495 Fed. Appx. 350, 355-56 (4th Cir. 2012). Nor will a "general theory of fraudulent concealment" where, like

9

SA8

here, "the plaintiff has [not] exercised usual or ordinary diligence for the discovery and protection of [their] rights." *Id.* Compass's state law claims arise out of the same set of allegations as the RICO claims (*see, e.g.,* Compl. ¶¶ 255, 265, 310), which as stated above and even presuming the preposterously articulated "facts" to be true, demonstrate a total lack of diligence by Compass and its CEO to protect its rights.[6] Thus, there can be no basis for the statute to be tolled. Compass's claims against Michael for Fraudulent Concealment/Fraud (Count X), Breach of Fiduciary Duty (Count XXIII) and Civil Conspiracy/Aiding and Abetting (XI, XV-XVI, and XXI) thus are time-barred.[7] *See Parker v. American Brokers Conduit*, 179 F. Supp. 3d 509, 518, 520 (D. Md. 2016) (fraud/fraudulent concealment; breach of fiduciary duty); *Prince George's Cnty. v. Longtin*, 419 Md. 450, 480 (2011) ("[A] civil conspiracy claim incorporates … its statute of limitations."); *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393-94 (S.D. N.Y. 2010) ("The statute of limitations for each aiding and abetting claim is determined by the underlying tort.").

---

[6] At the latest, the statute of limitations began to run at the time that Michael was terminated from Compass on November 23, 2018. Compl. ¶ 94.

[7] Pursuant to Rule 10(c), and to the extent applicable, Michael and George hereby adopt and expressly incorporate by reference the arguments made in the Memorandum of Law in Support of Motion to Dismiss the Complaint by Flywheel Digital LLC, James Columbus "Chip" DiPaula, Jr., Patrick Miller, and Ascential PLC (the "Flywheel Defendants' Motion to Dismiss") (EFC 23-1) as to the expiration of the statute of limitations of the underlying tort claims, including those for violation of the Federal Defend Trade Secrets Act of 2016 and State Maryland Uniform Trade Secrets Act, unfair competition, and fraud/fraudulent concealment. In any event, it is again worth mentioning that the ***only*** link between the Flywheel Defendants/Ascential and Michael is a single 2015 check, which certainly could have been discovered with ordinary diligence, yet predated the filing of this lawsuit by 7 years.

8849184_2

SA9

**II.     COMPASS FAILS TO STATE A CIVIL RICO CLAIM AGAINST MICHAEL AND GEORGE (COUNTS III & IV)**

Litigants are cautioned that "state laws bearing on commercial transactions are not to be eclipsed or preempted" by pursuit of RICO's heightened and extraordinary civil remedy of treble damages "for their harassment and settlement value." *The Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp. 2d 468, 476 (D. Md. 2002). Indeed, "[a] civil RICO claim is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity." *Hardwire, LLC v. Ebaugh IV*, Civ. No. JKB-20-0304, 2021 WL 3809078, at *5 (D. Md. Aug. 25, 2021). As such, "[f]or many years, the Fourth Circuit has taken a somewhat restrictive view of RICO actions based on ordinary claims of fraud," *Boyle*, 203 F. Supp. 2d at 476, requiring courts to "scrutinize" early on, allegations that "attempt to fit garden variety fraud claims within the standard of civil RICO…." *Hardwire*, 2021 WL 3809078, at *5. To sustain a claim for civil RICO, a plaintiff must plead: "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). The Complaint lacks multiple of these requisite elements.

A.     Compass Fails to Allege a RICO Enterprise.[8]

"A RICO enterprise is characterized by continuity, unity, shared purpose and identifiable structure," and it "must exist separate and apart from the pattern of racketeering activity in which

---

[8] Pursuant to Rule 10(c), Michael and George hereby adopt and expressly incorporate by reference the arguments in the Flywheel Defendants' Motion to Dismiss (ECF 23-1) as to the failure of Compass to plead the existence of a RICO enterprise as it relates to any scheme between or among the White Defendants, on the one hand, and the Flywheel Defendants and/or Ascential, on the other hand.

11

SA10

it was engaged." *Bailey v. Atlantic Automotive Corp.*, 992 F. Supp. 2d 560, 581 (D. Md. 2014). The Complaint does not identify any specific enterprise among the White Defendants, but instead, it appears to allege that one exists by an "association-in-fact [which is] not defined by a formal legal structure." *Id.* Where this is the case, an enterprise may be implied by the "association of its members for a common purpose of engaging in a course of conduct." *Id.* While the Complaint tries to concoct an enterprise through recitation of repeated buzz words that the White Defendants "share[d] a common purpose of harming Compass to hide the impropriety of their corporate spending for personal financial gain" (Compl. ¶¶ 254, 264), this statement alone pleads the opposite of any shared criminal enterprise. Indeed, it concedes that the purpose of the White Defendants purported illegal conduct was their own "personal financial gain," thus defeating the RICO claim. To be clear, the only commonality alleged between the separate acts of Michael, Daniel, and George is the incidental common ***result*** of injury to Compass.[9]

  B.  <u>Compass Fails to Plead a Pattern of Racketeering Activity.</u>

  As a threshold matter, even assuming, *arguendo*, George extorted Compass—which he did not—Compass's allegations of the "July Extortion Attempt" are insufficient to sustain a RICO claim against him. This Court has made clear that "[t]he focus of section 1962(c) is on *individual patterns of racketeering engaged in by a defendant*, rather than the collective activities

---

[9] Compass groups George together with Michael and Daniel here and suggests without even an illusion of good faith basis or support, that George is alleged to have used corporate funds for his own personal financial gain. In fact, the accusation against George is that he purportedly attempted to force Compass to give him a raise for his own personal financial gain, and not in furtherance of any common purpose with Michael and Daniel to harm Compass. *See* Compl. ¶¶ 144-57.

SA11

of the members of the enterprise, which are prescribed by section 1962(d)." *United States v. Crysopt Corp.*, 781 F. Supp. 375, 384 (D. Md. 1991) (citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (emphasis in original)). In other words, RICO is not to be used as a "second conspiracy statute," *id.*, and thus, "the requirements of § 1962(c) must be established as to each individual defendant," *see Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027-28 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 1000 (2009) (quoting *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987))). Here, George's single act of an alleged IT lockout on April 30, 2019 does not constitute a pattern of any kind (*see* Compl. ¶¶ 144-57)—let alone one of racketeering activity. *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) ("A 'pattern of racketeering activity' requires at least two acts of racketeering activity.").

As to Michael, as part of its pattern inquiry, the Fourth Circuit "looks to the criminal dimension and degree of the alleged misconduct." *See International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987). "Attention to the nature of the underlying offenses is necessary because the heightened civil and criminal penalties of RICO are reserved for schemes whose scope of persistence set them above the routine." *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074 (4th Cir. 1987). A non-exhaustive list of factors to consider in this inquiry include, "the number and variety of predicate acts, the length of time over which they were committed, the number of putative victims; [sic] the presence of separate schemes, and the potential for multiple distinct injuries." *Park v. Jack's Food Systems. Inc.*, 907 F. Supp. 914, 920 (D. Md. 1995).

A review of the narrative of claims against Michael (and Daniel) scripted by their disgruntled brother, John White, does not reveal a "pattern of racketeering activity" made up of "separate schemes" with multiple "putative victims" and "multiple distinct injuries." Rather, it depicts nothing more than a "garden variety" dispute among brothers/owners about the use of their family-run company's funds.

## III.    COMPASS FAILS TO PLEAD CERTAIN REMAINING STATE LAW CLAIMS AGAINST MICHAEL AND GEORGE

### A.    Compass's Fraudulent Concealment/Fraud Claim (Count X) Fails to State a Claim Against Michael or George Upon Which Relief May Be Granted.

Under Maryland law, both fraudulent concealment and/or fraud require that Compass plead, among other things, that it took some action in justifiable reliance on Michael's and George's concealment and/or misrepresentation, which caused damage. *EndoSurg Medical, Inc. v. EndoMaster Medical, Inc.*, 71 F. Supp. 3d 525, 555-56 (D. Md. 2014) (fraudulent concealment); *Kantesevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 601 (D. Md. 2018) (fraud). No such allegation is made here.  In fact, the only "action" alleged to have been taken by Compass in justifiable reliance on any undisclosed or false information is a decision to "declin[e] to pursue legal action against [the Flywheel Defendants] ***due to Daniel's*** conflicted legal advice…." Compl. ¶ 311 (emphasis added). Even assuming that to be true, action taken by Compass in reliance on purported legal advice from Daniel has nothing to do with either Michael or George and thus, any claim for fraudulent concealment/fraud against them fails at the outset.

14

B.    Michael and George neither Conspired with nor Aided and Abetted the Flywheel Defendants or Ascential (Counts XI, XV-XVI, and XXI).[10]

It is well-settled that civil conspiracy and aiding and abetting are not independent causes of action under Maryland law. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 (2000) (internal citations omitted). Assuming, *arguendo*, Compass's underlying tort claims against the Flywheel Defendants and Ascential are not dismissed, Compass nonetheless fails to state a claim against Michael or George under either vicarious liability theory.

For a defendant to be liable as a conspirator, a plaintiff must "assert [a] factual basis to support the conclusion," *Marshall v. Reno*, 915 F. Supp. 426, 430 (D.D.C. 1996), namely "[a] confederation of two or more persons by agreement or understanding," *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). Similarly, an aider or abettor must be shown to have given "substantial assistance or encouragement to [the principal] to engage in the tortious conduct." *Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 186 (1995).

Here, the **sole** connection alleged between Michael and the purported scheme by the Flywheel Defendants and Ascential to steal Compass trade secrets to jumpstart their multi-hundred-million-dollar venture is a single $65,000 company check earmarked on its face as "Final Payments to James DiPaula and Patrick Miller" in December 2015—more than a year *after* all the damage by the Flywheel Defendants allegedly had been done (*see, e.g.,* Compl. ¶¶

---

[10]  Pursuant to Rule 10(c), Michael and George hereby adopt and expressly incorporate by reference the Flywheel Defendants' Motion to Dismiss as to the arguments the state law claims are time-barred and/or fail to state a claim upon which relief may be granted.

15

183-201, 251).[11] It is not a plausible let alone reasonable inference that this isolated payment made long after the alleged misconduct somehow can be read properly to allege that Michael "fund[ed]" Flywheel and/or "knew and encouraged DiPaula and Miller's theft of Compass trade secrets and wanted Flywheel to succeed to the detriment of Compass." *Id.* ¶¶ 207-08.

Compass's tie between George and the Flywheel Defendants and Ascential is even more attenuated, and the allegation on its face borders on frivolous. Compass baldly alleges that George "engaged in the alleged IT misconduct to interfere with Compass's business in competition with Flywheel, among other things." *Id.* ¶ 309. This "alleged IT misconduct" occurred five years after Flywheel formed and eight months after it sold to Ascential for $400 million. (*see id.* ¶¶ 77, 144-57, 209). Thus, to state the obvious, it is not fathomable to conclude that the Flywheel Defendants and/or Ascential were looking to George at this point to help them gain some unfair advantage over Compass in the marketplace by locking them out of their IT system. In fact, based upon the pleading itself, that theory would be factually impossible.

C.    Compass Fails to State a Claim for Conversion (Count XXII) Against Michael.

"Conversion has been defined as a distinct act of ownership or dominion exerted by a person over the personal property of another which either denies the other's rights or is inconsistent with it." *Parker v. Kowalsky & Hirschhorn, P.A.*, 124 Md. App. 447, 459 (1999) (quoting *Baltimore & Ohio R.R. Co. v. Equitable Bank, N.A.*, 77 Md. App. 320, 325 (1988)).

---

[11] For the avoidance of any doubt, in paragraph 183 of the Complaint, Compass explicitly identifies this single payment as "***the connection*** between the extensive wrongdoing by Daniel, Michael, and George White set forth above, and the theft of Compass's trade secrets and proprietary information and know how by Flywheel, DiPaula, and Miller." (Emphasis added).

16

Absent from the Complaint is any factual support that Michael exerted control of Compass's personal property. Instead, Compass seemingly tries to hold Michael accountable for his adult son's purported actions simply and entirely by virtue of their familial relationship. *See* Compl. ¶ 347 ("Michael and George White intentionally and wrongful [sic] exercised dominion and control over Compass's personal property, as alleged above and including George White's acts…."). This is not a theory of liability supported by law.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Michael White and George White's Motion to Dismiss.[12]

---

[12] Upon dismissal of the federal claims, the Court should decline to exercise its supplemental jurisdiction over, and dismiss, the state law claims. *See* 28 U.S.C. § 1367(c)(3). Pursuant to Rule 10(c), Michael and George hereby adopt by reference the arguments in this regard set forth in Daniel White's Motion to Dismiss of even date.

17

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC


      /s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber (Bar ID 06095)
jschwaber@steinsperling.com
Judith G. Cornwell (Bar ID 20777)
jcornwell@steinsperling.com
(301) 354-8131 (facsimile)
1101 Wootton Parkway, Suite 700
(301) 340-2020

*Attorneys for Michael White and George White*

18

SA17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| COMPASS MARKETING, INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. 1:22-CV-00379 |
| | : | Judge George Levi Russell, III |
| FLYWHEEL DIGITAL, LLC, *et al.* | : | |
| | : | |
| Defendants | : | |

**ORDER**

Upon consideration of the Motion to Dismiss filed by Defendants Michael White and George White, it is this _____ day of _____, 2022, hereby

ORDERED, that Defendants Michael White and George White's Motion to Dismiss (ECF ___) be and hereby is, GRANTED; and it is further

ORDERED, that all claims against Michael White are dismissed with prejudice; and it is further

ORDERED, that all claims against George White except Count XXII for Conversion are dismissed with prejudice.

_____
Hon. George L. Russell, III
United States District Judge

3

8849184_2

SA18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COMPASS MARKETING, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case Number: 1:22-cv-00379-GLR** |
| | § | |
| **FLYWHEEL DIGITAL LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

## RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS DANIEL WHITE, GEORGE WHITE, AND MICHAEL WHITE

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTS PLEADED IN THE COMPLAINT ......................................................... 2

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ...................................................................................................... 5

    I.      THE STATUTE OF LIMITATIONS IS NOT A BAR TO ANY OF
           COMPASS'S CLAIMS ......................................................................... 5

           A.    The White Defendants Have Not Carried Their Burden of
                  Establishing Any Claim Accrued Prior to February 14, 2019 ................. 6

           B.    Even If Any Claims Accrued Prior to February 14, 2019 (They Did
                  Not), the Statute of Limitations Would Have Been Tolled .................... 11

    II.     THE RICO CLAIMS (COUNTS III AND IV)  ARE ADEQUATELY
           PLED ..................................................................................................... 13

           A.    Compass Has Adequately Alleged the RICO Enterprise ........................ 14

           B.    Compass Has Adequately Alleged a Pattern of Racketeering
                  Activity by Each of the White Defendants .............................................. 14

                  1.    Michael White ............................................................................ 15

                  2.    George White ............................................................................. 16

                  3.    Daniel White ............................................................................. 17

    III.    THE STATE LAW CLAIMS ARE ADEQUATELY PLED ............................. 20

           A.    The White Defendants Do Not Dispute That, If Timely, the
                  Breach of Fiduciary Duty Claim (Count XXIII) Is Adequately Pled ..... 20

           B.    The Conspiracy Claims (Counts XI, XV, and XVI) Are
                  Adequately Pled ....................................................................................... 20

           C.    The Fraudulent Concealment/Fraud Claim (Count X) Is
                  Adequately Pled ....................................................................................... 22

           D.    The Aiding and Abetting Claim (Count XXI) Is Adequately Pled .......... 25

           E.    The Conversion Claim (Count XXII) Is Adequately Pled ...................... 26

    IV.    IF THE COURT DISMISSES THE RICO CLAIMS, IT SHOULD
           EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE
           LAW CLAIMS ..................................................................................... 27

CONCLUSION .................................................................................................. 28

SA20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Gardiner*,
  300 F. Supp. 3d 718 (D. Md. 2018) ........................................................21

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987).............................................................................5

*Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ...............................................................18

*Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  665 A.2d 1038 (Md. 1995) ...................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................4

*Bank of Am. v. Jericho Baptist Church Ministries, Inc.*,
  No. 15-cv-02953, 2017 WL 193498 (D. Md. Jan. 17, 2017)...........................12-13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................4

*Bornstein v. Poulos*,
  793 F.2d 444 (1st Cir. 1986)................................................................13

*Cap. Lighting & Supply, LLC v. Wirtz*,
  No. 17-3765, 2018 WL 3970469 (D. Md. Aug. 20, 2018) ............................. *passim*

*Carlucci v. Han*,
  907 F. Supp. 2d 709 (E.D. Va. 2012) ......................................................22

*Crest Inv. Tr., Inc. v. Comstock*,
  327 A.2d 891 (Md. Ct. Spec. App. 1974)...................................................24

*CVLR Performance Horses, Inc. v. Wynne*,
  524 F. App'x 924 (4th Cir. 2013) ..........................................................19

*CX Reinsurance Co. v. Leader Realty Co.*,
  219 F. Supp. 3d 542 (D. Md. 2016)......................................................6, 11

*DCG & T ex rel. Battaglia/Ira v. Knight*,
  68 F. Supp. 3d 579 (E.D. Va. 2014) ........................................................8

SA21

*Desser v. Woods*,
    296 A.2d 586 (Md. 1972) ............................................................9

*Dual Inc. v. Lockheed Martin Corp.*,
    857 A.2d 1095 (Md. 2004) .......................................................11

*Dwoskin v. Bank of Am., N.A.*,
    850 F. Supp. 2d 557 (D. Md. 2012).........................................25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) ...................................4, 22, 23

*Ekstrom v. Cong. Bank*,
    No. 20-1501, 2020 WL 6565251 (D. Md. Nov. 9, 2020) .....................19

*Equity Prime Mortg., LLC v. 1st Fin., Inc.*,
    No. 17-cv-3754, 2019 WL 859135 (D. Md. Feb. 22, 2019) (Russell, J.) .............5

*Fed. Sav. & Loan Ins. Corp. v. Williams*,
    599 F. Supp. 1184 (D. Md. 1984) .............................................13

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*,
    360 Md. 76, 756 A.2d 963 (Md. 2000) ....................................8, 9

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) (en banc) .....................................6

*Great Am. Ins. Co. v. Nextday Network Hardware Corp.*,
    73 F. Supp. 3d 636 (D. Md. 2014) ..........................................21

*Hall v. Greystar Mgmt. Servs., L.P.*,
    179 F. Supp. 3d 534 (D. Md. 2016) ......................................27-28

*Hecht v. Resol. Tr. Corp.*,
    635 A.2d 394 (Md. 1994) ...........................................................12

*Hill v. Brush Engineered Materials, Inc.*,
    383 F. Supp. 2d 814 (D. Md. 2005)...........................................21

*Homa v. Friendly Mobile Manor, Inc.*,
    612 A.2d 322 (Md. Ct. Spec. App. 1992) ...................................24

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) (per curiam) .................................................5

*King v. Rubenstein*,
    825 F.3d 206 (4th Cir. 2016) ......................................................5

SA22

*Mathews v. Cassidy Turley Md., Inc.*,
    80 A.3d 269 (Md. 2013) ................................................................................12

*Merchants Mortg. Co. v. Lubow*,
    339 A.2d 664 (Md. 1975) ...............................................................................8

*Mitchell Tracey v. First Am. Title Ins. Co.*,
    935 F. Supp. 2d 826 (D. Md. 2013) ...............................................................14

*Mosesian v. Peat, Marwick, Mitchell & Co.*,
    727 F.2d 873 (9th Cir. 1984) .........................................................................13

*Mylan Lab'ys, Inc. v. Akzo, N.V.*,
    770 F. Supp. 1053 (D. Md. 1991) ...................................................................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...............................................................4, 7, 11

*Noel v. PACCAR Fin. Corp.*,
    No. 18-3936, 2021 WL 4918059 (D. Md. Oct. 21, 2021) ..............................27

*Park v. Jack's Food Sys., Inc.*,
    907 F. Supp. 914 (D. Md. 1995) ...................................................................17

*Potomac Conf. Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*,
    2 F. Supp. 3d 758 (D. Md. 2014) ..................................................................27

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ......................................................................................13

*Shanaghan v. Cahill*,
    58 F.3d 106 (4th Cir. 1995) ...........................................................................27

*Shenker v. Laureate Educ., Inc.*,
    983 A.2d 408 (Md. 2009) ................................................................................7

*Spinelli, Kehiayan-Berkman, S.A. v. Imas Gruner, A.I.A., & Assocs.*,
    602 F. Supp. 372 (D. Md. 1985) .....................................................................8

*Starr v. VSL Pharms., Inc.*,
    509 F. Supp. 3d 417 (D. Md. 2020) ...............................................14, 15, 19, 20

*Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*,
    197 F. Supp. 2d 298 (D. Md. 2000) .................................................................4

*Todman v. Mayor & City Council*,
    488 F. Supp. 3d 218 (D. Md. 2020) (Russell, J.) ..........................................24

SA23

*United States v. Mathis*,
   932 F.3d 242 (4th Cir. 2019) ..............................................................18

**Statutes and Rules**

18 U.S.C. § 1961(1) ............................................................................15

18 U.S.C. § 1961(4) ............................................................................14

18 U.S.C. § 1962 ...........................................................................13, 14

Md. Code Ann., Cts. & Jud. Proc. § 5-101 .........................................5

Md. Code Ann., Cts. & Jud. Proc. § 5-203 .......................................11

Fed. R. Civ. P. 8(a) .......................................................................4, 27

Fed. R. Civ. P. 8(a)(2) .........................................................................4

Fed. R. Civ. P. 9(b) .........................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................4, 6

**Other Authorities**

S. Rep. No. 91–617, 76-77 ...............................................................14

SA24

**INTRODUCTION**

The Complaint filed by Plaintiff Compass Marketing, Inc. ("Compass") pled, in overwhelming detail, allegations setting out actionable claims for relief against Defendants Michael White, Daniel White, and George White (collectively referred to as "the White Defendants"). Those detailed allegations set forth ***nine*** separate schemes undertaken by the White Defendants to misappropriate funds, enrich themselves, advantage Compass's competitors (including Defendants Ascential plc and Flywheel Digital LLC, along with Defendants DiPaula and Miller), and – after they were terminated from Compass – inflict devastating harm on Compass and sabotage Compass's relationships with its remaining clients. With regard to the claims sounding in fraud, the Complaint alleges the "who, what, when, where, and how" of dozens of fraudulent acts committed by the White Defendants. The Complaint also sets forth the specific actions the White Defendants took to conceal their wrongdoing, and the measures that Compass had to undertake in order to discover the White Defendants' historic and ongoing malfeasance.

It is a fundamental principle of civil procedure that, at this stage in the proceedings, the Court must accept all these allegations as true, and draw all reasonable inferences in Compass's favor. The White Defendants invite this Court, in the most conclusory terms, to disregard that principle. They ask the Court to ***assume*** that Compass could have discovered the White Defendants' illegal activities earlier, even though Compass has pled in intricate detail how the White Defendants used their control of Compass's books and records to prevent that from happening. They also ask the Court to ***disregard*** well-pled allegations in the Complaint in order to dismiss Compass's Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law claims, which the Court may not do. Accepting the allegations in the Complaint as true, and drawing all reasonable inferences in Compass's favor, it is plain that the Complaint more than

adequately pleads timely, viable claims against each of the White Defendants, and that the White Defendants' motions to dismiss must be denied in their entirety.

### FACTS PLEADED IN THE COMPLAINT

For more than 20 years, Michael and Daniel White took advantage of their roles as officers and directors of Compass to embezzle funds, enrich themselves and their family members, and directly assist the wrongful competitive efforts and trade secret theft by the other corporate and individual Defendants, in a multitude of ways. Among other acts of wrongdoing described in the Complaint, they stole monies that were intended for Compass and deposited them into personal checking accounts (Compl. ¶¶ 99-107); directed company salaries and benefits to family members who were never actually employed by Compass (*id.* ¶¶ 108-18); paid millions of dollars of Compass funds to the IRS under the guise of "tax withholding," then claimed those millions back as personal tax refunds (*id.* ¶¶ 119-25); paid millions of dollars directly to themselves from Compass's accounts disguised as loan repayments for what they privately described as "BS loan[s]" (*id.* ¶¶ 126-43); used company credit cards for personal expenses, including lavish vacations and outside business interests (*id.* ¶¶ 171-82); conspired with individual Defendants DiPaula and Miller, and other departing employees, to misappropriate trade secrets from Compass in support of a competing venture (*id.* ¶¶ 76, 89-90, 94, 202-08); and materially supported that unfairly competing venture (*id.*).

Michael and Daniel White used their executive influence over Compass's payroll systems and internal controls – especially the influence that Michael White had as Vice President of Operations, and that Daniel White had as a lawyer and the company's acting General Counsel – to doctor Compass's books and records and conceal their wrongful activities from other executives of Compass. *See, e.g.*, *id.* ¶¶ 118, 119-43, 172-178; *see also id.* ¶¶ 81, 89. It was only after Michael and Daniel White were removed from Compass's Board of Directors on February 14, 2019, and

SA26

Compass retained the services of a forensic fraud examiner and a separate criminal investigator, that Compass first learned of the injuries that Michael and Daniel White had inflicted on Compass during their years as directors. *See id.* ¶¶ 95-97.

The wrongful conduct did not cease after Michael and Daniel White left the company. Michael and Daniel White continued to misappropriate funds belonging to Compass. *See id.* ¶ 182. They also commenced an illegal campaign of retribution against their former employer, attempting to sabotage Compass's client relationships and its reputation in the marketplace (*id.* ¶¶ 165-70), and initiating sham legal proceedings to disrupt Compass's business operations (*id.* ¶¶ 158-64). Moreover, in an illegal scheme spearheaded by Compass's former Information Technology ("IT") administrator, George White, the White Defendants sought to extort funds from Compass and – when the attempt at extortion was unsuccessful – locked Compass out of its own web domain, including all of the employee email accounts and business records that were maintained using that domain. *See id.* ¶¶ 144-57. George White, the specific individual with the means and access to implement this IT lockout, did so in collusion with Daniel and Michael White. *See id.* The Complaint avers evidence that Michael White is financially supporting the IT lockout, the IT lockout has facilitated further misappropriation of trade secrets, and the White Defendants have been using their control of Compass's historical data to spoliate evidence that could further expose Michael and Daniel White's criminal wrongdoing. *See id.* ¶¶ 156-57, 226. The IT lockout – which continues to this day – has not only had a devastating impact on Compass's business operations and client relationships, but has also impaired Compass's ability to uncover the full extent of the White Defendants' wrongdoing because Compass has limited access to its communications and business records from the time period when the White Defendants were officers, directors, and employees. *See id.* ¶¶ 144-57.

3

SA27

On February 14, 2022, three years after the removal of Michael and Daniel White from Compass's Board of Directors, and just under three years from when the White Defendants first blocked Compass from accessing its own email accounts and business records, Compass filed the Complaint initiating this action.

## LEGAL STANDARD

As to the White Defendants, the Complaint asserts some claims that must satisfy the notice pleading requirements of Federal Rule of Civil Procedure ("Rule") 8(a) (Counts XI, XV, XXII), and others that must satisfy the heightened pleading requirement of Rule 9(b) (Counts III, IV, X, XVI, XXI).[1]

For the claims subject to Rule 8(a) to withstand a motion under Rule 12(b)(6), the Complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. The Court must "accept[] all well-pled facts as true and construe [] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must also "draw all reasonable inferences [from the facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). The purpose of a Rule 12(b)(6) motion is to "'test[] the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability

---

[1]    The RICO claims (Counts III and IV) must only satisfy Rule 9(b) to the extent that the predicate acts sound in fraud, but since all predicate acts are plainly alleged with the requisite specificity – whether required or not – the distinction is largely immaterial. *See Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 326 (D. Md. 2000) ("Rule 9(b) applies to RICO claims where the alleged predicate acts involved fraud").

SA28

of defenses.'" *Equity Prime Mortg., LLC v. 1st Fin., Inc.*, No. 17-cv-3754, 2019 WL 859135, at *3 (D. Md. Feb. 22, 2019) (Russell, J.) (alteration in original) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) "does not require the elucidation of every detail of the alleged fraud." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

## ARGUMENT[2]

### I. THE STATUTE OF LIMITATIONS IS NOT A BAR TO ANY OF COMPASS'S CLAIMS

The statute of limitations does not begin to run until the injured party either discovers the injury or should have discovered it through reasonable diligence. Based on the filing date of this case, any RICO claims accruing after February 14, 2018 (*i.e.*, four years prior to the filing of the Complaint) and tort claims accruing after February 14, 2019 (*i.e.*, three years prior to the filing of the Complaint) are timely. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987) (holding that civil RICO claims have a statute of limitations of four years); Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues"). In order to prevail on their motions to dismiss, the White Defendants have

---

[2]    The White Defendants incorporate by reference certain arguments raised in the motions to dismiss by Defendants Flywheel Digital LLC, James Columbus DiPaula, Patrick Miller, and Ascential plc (collectively referred to herein as the "Flywheel Defendants"). Compass, in turn, incorporates by reference all the responsive arguments made in its opposition to the Flywheel Defendants' motion to dismiss. *See* ECF No. 44 (the "Flywheel Opposition").

the burden to prove Compass's claims accrued before these dates.  *See CX Reinsurance Co. v. Leader Realty Co.*, 219 F. Supp. 3d 542, 546 (D. Md. 2016) (denying motion to dismiss based on the statute of limitations, holding it is the "defendant[] who bears the burden of establishing the defense").  The White Defendants have failed to carry their burden, and so their motions must be denied.[3]

### A.    The White Defendants Have Not Carried Their Burden of Establishing Any Claim Accrued Prior to February 14, 2019

The Court "generally cannot reach the merits" of a statute of limitations defense at the pleading stage. *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" will a court, under Rule 12(b)(6), dismiss a complaint based on an affirmative defense. *Goodman*, 494 F.3d. at 464.  Motions to dismiss are rarely granted on statute of limitation defenses precisely because the application of a limitations period often entails a fact-intensive inquiry, *id*. at 465-66, and the defendants bear "the burden of establishing the affirmative defense" predicated on limitations.  *Id*. at 464.  The White Defendants have failed to carry that burden here.

The Parties agree that the statute of limitations did not begin to run on any of Compass's claims until it "discovered, or should have discovered, the injury."  Daniel Br. at 4; M&G Br. at 7 (standard for RICO claims); Daniel Br. at 5; M&G Br. at 9 (standard for tort claims).  As set forth in the Complaint, Compass did not discover any harm inflicted by the White Defendants until ***after*** February 14, 2019, when it removed Michael and Daniel White from Compass's Board of Directors and retained a forensic fraud examiner and separate criminal investigator to investigate

---

[3]    Michael and George White's memorandum of law in support of their motion to dismiss, ECF No. 41, is cited herein as "M&G Br."  Daniel White's memorandum of law in support of his motion to dismiss, ECF No. 42-1, is cited herein as "Daniel Br."

Michael and Daniel White's conduct during their time at Compass.[4]  *See* Compl. ¶¶ 95-97.  In their

motions to dismiss, the White Defendants do not contest the allegation that Compass was unaware

of the injuries inflicted by the White Defendants until after February 14, 2019.  *See* M&G Br. at

7-10; Daniel Br. at 4-6.

Instead, the White Defendants' only argument in support of their motions to dismiss is that

they contend their illegal activities ***could have*** been discovered "on or about the time they occurred

with reasonable diligence from Compass's own accounting records."  Daniel Br. at 5; *see also*

M&G Br. at 8-9 (contending the misconduct was discoverable by "reasonable diligence through

Compass's financial and accounting records").[5]  But, as a threshold matter, the White Defendants

do not dispute that Michael and Daniel White were both directors of Compass, that Michael White

was also the "Vice President of Operations and Comptroller of Compass," entrusted with

"overseeing the bookkeeping and financial accounts," and that both he and Daniel White owed

Compass a fiduciary duty.[6]  *See* Compl. ¶¶ 19, 93.  That fiduciary relationship did not conclude

until February 14, 2019, when Michael and Daniel White were removed from Compass's board of

directors.  *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 420 (Md. 2009) (Maryland law

---

[4]    Michael White argues – in a single sentence in a footnote – that claims against him should
accrue no later than November 23, 2018, because that was the date he was supposedly "terminated
from Compass."  M&G Br. at 10 n.6.  But the Complaint specifically alleges that (i) this was the
date he lost his role as Vice President of Operations, not the date when he was removed from
Compass's Board of Directors; (ii) his termination as Vice President of Operations was the result
of an unprofessional email, not because Compass had uncovered any of his many acts of
wrongdoing alleged in the Complaint; and (iii) Compass did not learn of the harm Michael had
caused while a director of Compass until after February 14, 2019.  *See* Compl. ¶¶ 94-97.  The
Court must construe these allegations as true for the purposes of resolving this motion.  *See Nemet
Chevrolet*, 591 F.3d at 255.

[5]    Although the White Defendants address the RICO and tort claims separately, they advance
the same argument as to each category of claims.  *See* Daniel Br. at 4-6; M&G Br. at 7-10.

[6]    The misconduct personally attributable to George White occurred within three years of
the filing of the Complaint.  *See* Comp. ¶¶ 144-57.

SA31

imposes a fiduciary duty on directors of corporations); *DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 587 (E.D. Va. 2014) (Virginia law imposes a fiduciary duty on directors of corporations).   This is relevant to determining when Compass's claims accrued because, "[a]lthough a party is usually required to exercise ordinary diligence to discover fraudulent conduct of the opposite party, ***different standards are applied where fiduciaries are involved***." *Merchants Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975) (emphasis added) (holding lower standard of diligence applied to claims asserted against former officer and director of corporation).   The reason for this is that "the existence of a continuous, fiduciary relationship permits a complaining party to trust, albeit not blindly, that such a relationship will not be violated and that the [services] he or she receives will not be provided negligently." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 108–09, 756 A.2d 963, 980 (Md. 2000)*; see also Spinelli, Kehiayan-Berkman, S.A. v. Imas Gruner, A.I.A., & Assocs.*, 602 F. Supp. 372, 375 (D. Md. 1985) ("[W]here a fiduciary duty or relationship exists between the plaintiff and defendant, the failure to use due diligence in discovering the claim may be excused.").

Thus, for the White Defendants to suggest that an ***independent audit*** of Compass's accounting records could have uncovered their wrongdoing is irrelevant.   Unless and until it was on inquiry notice of the alleged wrongdoing, Compass was under no obligation to conduct such an audit.   Compass was entitled to rely on the fiduciary it entrusted with "overseeing [its] bookkeeping and financial accounts" (Comp. ¶ 93) and was "under no duty to make inquiries about the quality or bona fides of the services received" in order to prevent the statute of limitations from running. *Frederick Rd. Ltd. P'ship*, 756 A.2d at 974-75.   Michael and George White do not contend that Compass was on inquiry notice as to their wrongdoing, *see* M&G Br. at 9-10 (arguing only that "reasonable diligence" could have uncovered the wrongdoing), and while Daniel White makes the

conclusory contention that Compass should have been on inquiry notice, he does not identify <u>any</u> facts that were known to Compass that should have prompted such an inquiry. *See Daniel Br.* at 5-6. Accordingly, the White Defendants have failed to establish that any of Compass's claims are time-barred. *See Frederick Rd. Ltd. P'ship*, 756 A.2d at 976 ("facts placing the confiding party upon inquiry [notice]" about a fiduciary's misconduct may trigger the statute of limitations, but "the burden is upon the trusted party to prove such [] knowledge") (quoting *Desser v. Woods*, 296 A.2d 586, 593 (Md. 1972)).

Furthermore, even setting aside the fiduciary obligations of the White Defendants, the Complaint alleges in detail how the White Defendants controlled and manipulated "Compass's own accounting records" in order to prevent anyone exercising a reasonable level of diligence from discovering their wrongdoing. Because manipulation of the accounting records was not facially apparent, it was only through the heightened scrutiny of a forensic fraud examiner and a separate criminal investigator – retained after February 14, 2019 – that Compass was able to identify the harms that had been covered up by Michael and Daniel White during their time as directors. *See* Compl. ¶¶ 95-97.

Below is a summary of the Complaint's allegations with regard to the White Defendants' personal misconduct prior to February 14, 2019, and the specifically pled bases for why a reasonably diligent review of "Compass's own accounting records" would not have uncovered the alleged wrongdoing:

- **The Secret Compass Bank Account Scheme:** Michael and Daniel White created ***secret*** bank accounts, "without Compass's knowledge or approval," into which they deposited stolen checks from Compass's clients, and which they then used for personal expenses. Compl. ¶¶ 99-107. A reasonably diligent review of Compass's accounting records would not have revealed the existence of secret bank accounts that were intentionally concealed from Compass. *See id.*

9

SA33

- **The Ghost Employee Scheme:**  Michael and Daniel White added several family members and friends to the Compass payroll and benefits programs, none of whom were employees.  *See id.* ¶¶ 108-18.  "Michael intentionally covered up these ghost employees in the Compass payroll system by creating fictitious spreadsheets and reports to provide to corporate leadership . . . . Michael's falsified records prevented Compass from discovering the ghost employee scheme until Compass later initiated an investigation following the removal of Daniel and Michael from their roles at Compass."  *Id.* ¶ 118.

- **IRS Tax Check Scheme:**  Michael White manipulated Compass's payroll system so that millions of dollars were sent to the IRS as "tax withholding" payments for Michael White, Daniel White, and their spouses, with the intention that these individuals would later claim those overpayments from the IRS as "tax refunds."  *Id.* ¶¶ 119-25.  This allowed Michael and Daniel White to embezzle millions of dollars from Compass, while concealing those sums in ordinary payments Compass made to the IRS each month, such that a reasonably diligent review of Compass's accounting records would not have uncovered the malfeasance.  *See id.*

- **The Shareholder Loan Scheme:**  Michael and Daniel White embezzled more than $1 million in direct payments from Compass, which they disguised as principal and interest payments on shareholder loans they purportedly had made to the company.  *See id.* ¶¶ 126-43.  A reasonably diligent review of Compass's accounting records would not have been sufficient to determine that these payments were fraudulent in nature, and not legitimate installment payments on outstanding debt.  *See id.*

- **Personal Use of Company Credit Cards:**  Compass issues American Express cards to its employees, but uses a platform called "Expensables" to ensure that the cards are only used for legitimate business expenses.  *See id.* ¶¶ 172-73.  The employee responsible for reviewing and approving credit card charges was Michael White.  *See id.*  Michael White terminated the link between his and Daniel White's corporate credit cards and Expensables so that Compass would not be able to learn that they had been using the company credit cards for personal expenses.  *See id.* ¶¶ 174, 178.

- **Aiding and Abetting the Flywheel Defendants' Theft of Trade Secrets and Unfairly Competing Enterprise:**  In late 2015, when the Flywheel Defendants were building their competing business venture based on trade secrets and proprietary information stolen from Compass, Michael and Daniel White stole tens of thousands of dollars from Compass and transferred it to the Flywheel Defendants.  *See id.* ¶¶ 202-08.  The payments to the Flywheel Defendants were made as cashiers' checks, using funds drawn from personal checking accounts, meaning they were unknown to Compass.  *See id.*  The theft of funds from Compass was disguised as a severance payment and was not paid directly to its intended recipients (Defendants DiPaula and Miller) but rather to an intermediary (Daniel White), meaning a reasonably diligent review of Compass's accounting records would not have been sufficient to determine the improper nature of the transaction.  *See id.*

10

SA34

Accepting these allegations as true – as the Court must for purposes of this motion – Compass could not have learned of its claims through the exercise of reasonable diligence prior to February 14, 2019. *See Nemet Chevrolet*, 591 F.3d at 255 (on a motion to dismiss, the court must "accept[] all well-pled facts as true and construe [] these facts in the light most favorable to the plaintiff"). Accordingly, the White Defendants have failed to carry their burden of proving any claim is time-barred on the face of the Complaint, and their motion should be denied. *See CX Reinsurance*, 219 F. Supp. 3d at 546 (court denies motion to dismiss based on the statute of limitations because it is the "defendant[] who bears the burden of establishing the defense," and that burden is rarely carried at the pleading stage).

### B. Even If Any Claims Accrued Prior to February 14, 2019 (They Did Not), the Statute of Limitations Would Have Been Tolled

Even if the White Defendants had established that any of Compass's claims accrued more than three years prior to commencement of this action – which for the reasons set forth above, they have not – there are two separate tolling doctrines that would apply and toll the statute of limitations until at least February 14, 2019: the doctrines of fraudulent concealment and adverse domination. The application of either doctrine renders Compass's claims timely, and both are applicable here.

<u>Fraudulent concealment</u>: When a defendant acts through fraud or concealment to frustrate a plaintiff's ability to discover a claim, the statute of limitations is tolled until "the party discovered, or through the exercise of ordinary diligence should have discovered the fraud." *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1105 (Md. 2004) (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-203). Even if Compass's claims accrued prior to February 14, 2019 – which they did not – the statute of limitations would have been tolled by the actions the White Defendants took to fraudulently conceal their misconduct. As set forth above, the Complaint pleads the

specific steps the White Defendants took to fraudulently conceal their wrongdoing from Compass and others. *See* Compl. ¶¶ 99-143, 171-82, 202-08. The Complaint also pleads facts establishing Compass's due diligence. *See id.* ¶¶ 95-96. Specifically, the Complaint demonstrates that when Michael and Daniel White began acting in a manner that was openly disruptive to Compass's business operations, Compass removed them from the company's Board of Directors, and promptly hired a forensic fraud examiner and separate criminal investigator to investigate whether they had engaged in any misconduct while directors. Compl. ¶¶ 94-96. For the purposes of a motion to dismiss, the Court must interpret these facts in the light most favorable to Compass, and they preclude dismissal based on the statute of limitations. *See Mathews v. Cassidy Turley Md., Inc.*, 80 A.3d 269, 290 (Md. 2013) ("Whether a plaintiff's failure to discover a cause of action was attributable to fraudulent concealment by the defendant is ordinarily a question of fact to be determined by the factfinder, typically a jury.").

<u>Adverse domination</u>: Where, as here, the plaintiff is a corporation that has been injured by the malfeasance of its own officers or directors, the doctrine of adverse domination tolls the statute of limitations until a disinterested majority of nonculpable directors controls the corporation. *Hecht v. Resol. Tr. Corp.*, 635 A.2d 394, 402 (Md. 1994). Maryland courts adopted the adverse domination doctrine because "control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests." *Id.* (citations and internal quotation marks omitted). The adverse domination doctrine tolls the statutes of limitations for not only officers and directors of a corporation, *i.e.*, Daniel White and Michael White, but also individuals whose misconduct went unaddressed due to the culpable directors' influence over the corporation, *i.e.*, George White, who reported directly to Michael White (Compl. ¶ 92). *See Bank*

SA36

*of Am. v. Jericho Baptist Church Ministries, Inc.*, No. 15-cv-02953, 2017 WL 193498, at *4 (D. Md. Jan. 17, 2017); *see also Bornstein v. Poulos*, 793 F.2d 444, 448 (1st Cir. 1986) (applying the adverse domination doctrine to toll claims against an outside attorney); *Fed. Sav. & Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184, 1194 (D. Md. 1984) (applying the adverse domination doctrine to toll claims against a lower-level employee); *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984) (applying the adverse domination doctrine to toll claims against an outside audit firm).  As set forth in the Complaint, a disinterested majority of nonculpable directors did not control Compass until February 14, 2019, when the Compass Board of Directors voted to remove Michael and Daniel White as directors.  Compl. ¶ 95.

Accordingly, under either of the doctrines described above, even if Compass's claims had accrued prior to February 14, 2019 – which they did not – the statutes of limitations for Compass's claims against the White Defendants would have been tolled until February 14, 2019, rendering all of Compass's claims timely.

## II.    THE RICO CLAIMS (COUNTS III AND IV)  ARE ADEQUATELY PLED

Compass brings claims under Sections 1962(c) and (d) of the RICO Act.  *See* Compl. ¶¶ 249-68.  "A violation of § 1962(c) . . . requires (1) [injurious] conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Section 1962(d) of the RICO Act makes it independently unlawful for any person to "conspire" to commit a violation of Section 1962(c).  *See* 18 U.S.C. § 1962.  The White Defendants seek dismissal of the RICO claims against them by contesting the second and third elements:  the use of an "enterprise," and a "pattern" of racketeering activity.  *See* Daniel Br. at 7; M&G Br. at 11-13.  For the reasons set forth below, the White Defendants' arguments for dismissal are without merit and their motions should be denied.

### A.    Compass Has Adequately Alleged the RICO Enterprise

In order to plead a viable RICO claim, the Complaint may allege *either* a formal enterprise through which the defendants committed their pattern of racketeering activities, *or* an "association-in-fact." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013).  The White Defendants contend the Complaint fails to identify "any specific enterprise among the White Defendants" at all.  M&G Br. at 11-12; Daniel Br. at 8-9.  But this is simply incorrect.  The RICO enterprise alleged in the Complaint ***is Compass itself***; a legitimate enterprise "engaged in . . . interstate commerce," "through which" the White Defendants conducted a pattern of unlawful racketeering activity.  *See* 18 U.S.C. § 1962; *see also* ECF No. 44 at 13-17.  The RICO Act itself defines the term "enterprise" as including "corporations," and the legislative history of the Act makes it clear that the drafters envisioned scenarios where a legitimate business – such as Compass – would be infiltrated by bad actors, rendering it both a victim of racketeering activity and also the "enterprise" through which that racketeering activity was committed.  *See* 18 U.S.C. § 1961(4); *see also* ECF No. 44 at 13-17.

There is no dispute that the White Defendants were officers and directors of Compass and that the Complaint alleges in detail how they committed their racketeering activities through their positions as officers and directors of Compass.  *See, e.g.*, Compl. ¶¶ 99-182.  Accordingly, the "enterprise" element of Compass's RICO claims is adequately pled.  *See* S. Rep. No. 91–617, 76-77 (listing examples of legitimate enterprises to include advertising agencies, banking institutions, and insurers, among others).

### B.    Compass Has Adequately Alleged a Pattern of Racketeering Activity by Each of the White Defendants

A "pattern of racketeering activity" requires at least two related predicate acts of racketeering activity within a ten-year time-period.  *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d

14

SA38

417, 438 (D. Md. 2020).  The types of misconduct that constitute "racketeering activity" are enumerated in Section 1961.  *See* 18 U.S.C. § 1961(1).  "Predicate acts are 'related' if they have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Starr*, 509 F. Supp. 3d at 438. (citation omitted).  The Complaint pleads that each of the White Defendants engaged in a pattern of racketeering activity, and – for the reasons set forth below – the White Defendants' arguments to the contrary are without merit.

### 1.    Michael White

Michael White's only argument as to why the Complaint supposedly does not plead a pattern of racketeering against him is a single, conclusory sentence asserting that the Complaint "depicts nothing more than a 'garden variety' dispute among brothers/owners about the use of their family-run company's funds," and therefore is not the kind of "organized, longterm, habitual criminal activity" that the RICO statute was intended to address.  *See* M&G Br. at 11, 13-14.  But "organized, longterm, habitual criminal activity" is an apt description of precisely what is alleged in the Complaint, especially as to Michael White.  The Complaint sets forth particularized allegations of ***dozens of predicate acts*** committed by Michael White, in furtherance of no fewer than ***nine separate schemes***, perpetrated over the course of ***more than 20 years***.  *See generally* Compl.  ¶¶ 99-182, 202-08.

This is no "garden variety" dispute or family squabble; it concerns a decades-long criminal undertaking, whose participants went so far as to employ government instrumentalities in furtherance of their fraudulent acts.  *See id.* ¶¶ 119-25 (White Defendants used the IRS to launder embezzled funds).  A recent precedent from this District is instructive.  In *Capital Lighting & Supply, LLC v. Wirtz*, the court recognized that the "initial scheme" the defendants had engaged in was a "rather straightforward" plan, whereby an "inside man" would allow companies to overbill

15

SA39

his employer and then use his authority within the company to "cover their tracks." No. 17-3765, 2018 WL 3970469, at *7 (D. Md. Aug. 20, 2018). The court held that, "had it stopped there, perhaps Plaintiff's RICO claims would be unsustainable. It did not stop there, however." *Id.* "On the contrary, the Complaint alleges a host of schemes that evolved over time to increase Defendants' returns and to avoid detection." *Id.* Thus, while a single scheme might not rise to the level of a RICO violation, "the scope, duration, and degree of Defendants' conduct mandates a different result. Defendants did not engage in a single scheme to defraud Plaintiff. Nor is this a narrow dispute between former family friends. Rather, the Complaint alleges . . . a years' long endeavor by *multiple* individuals . . . using *multiple* schemes to infiltrate, corrupt, and profit from an otherwise *legitimate business*. ***Put simply, Defendants allegedly turned an entire division of Plaintiff's company into their own personal piggy bank. This type of extensive, ongoing, commercial fraud falls squarely within the purview of RICO's pattern requirement***." *Id.* at *9 (emphasis in bold added).

That is precisely the situation here. As the years went by, the White Defendants engaged in an increasing number of fraudulent schemes to extract funds from Compass and employed increasingly extreme measures to cover up their illegal activities, culminating in the IT lockout in 2019. *See* Compl. ¶¶ 99-182, 202-08. Thus, as in *Capital Lighting*, what began as a "garden variety" fraud metamorphosed into the kind of "years' long endeavor . . . using *multiple* schemes to infiltrate, corrupt, and profit from an otherwise *legitimate business*" that warrants liability under RICO. 2018 WL 3970469, at *9. Accordingly, Michael White's motion to dismiss the RICO claim must be denied.

### 2.      George White

George White argues that he only stands accused of one act of racketeering activity – the IT lockout of Compass's email accounts and business records that began on April 30, 2019 – and

that this is insufficient to establish a "pattern" of racketeering activity by him. M&G Br. at 13. The Complaint alleges, however, that George White personally committed *at least three* predicate criminal acts, which is sufficient to establish liability under the RICO Act. *See Park v. Jack's Food Sys., Inc.*, 907 F. Supp. 914, 919 (D. Md. 1995) (denying motion to dismiss where each defendant was alleged to have committed two predicate acts). Aside from the IT lockout itself – which George White does not dispute is adequately alleged – the Complaint further alleges that George committed a separate criminal act by attempting to extort money from Compass prior to the IT lockout (Compl. ¶¶ 146-49), and subsequently engaged in spoliation of evidence of the other White Defendants' criminal activity, *i.e.*, obstruction of a criminal investigation (*id.* ¶¶ 156-57). Moreover, George White is still preventing Compass from accessing its email and business records, meaning in addition to committing several predicate acts of criminal activity, he is engaged in an ongoing wrong that has been continuing for more than three years. *See* Compl. ¶¶ 151, 156-57. That is precisely the kind of ongoing, illegal behavior that gives rise to liability under the RICO Act. Accordingly, George White's motion to dismiss the RICO claim must be denied.

### 3. Daniel White

Daniel White asserts several arguments why he contends there is no "pattern of racketeering activity" alleged against him. *See* Daniel Br. at 9-12. All are equally meritless.

***First***, Daniel White argues in conclusory terms that the Complaint only accuses him of "single, limited scheme to defraud," as opposed to multiple, related acts of illegal conduct. *Id.* at 10. This is plainly not the case. The Complaint alleges that Daniel participated in *nine* separate illegal schemes over the course of 20 years. *See* Compl. ¶¶ 99-182, 202-08. Specifically, in addition to the theft of trade secrets from Compass, Daniel is alleged to have participated in the "Secret Compass Bank Account Scheme," "Ghost Employee Scheme," "IRS Tax Check Scheme," "Shareholder Loan Scheme," "Information Technology Lockout of Compass Business Records

17

and Accounts," "Sham Legal Campaign," "Anonymous Campaign Against Compass," and "Personal Use of Compass Corporate Credit Cards." *See id.* As alleged in the Complaint, these nine separate schemes all shared "the same or similar purposes, results, participants, victims, [and/or] methods of commission," and as such they are sufficiently related to constitute a pattern of racketeering activity. *See United States v. Mathis*, 932 F.3d 242, 260 (4th Cir. 2019) (racketeering acts committed by various combinations of the defendants, sharing a common purpose, gave rise to RICO liability).

**Second**, Daniel White argues that a RICO claim typically involves multiple alleged victims, and the present case is only being brought by a single plaintiff, Compass. *See* Daniel Br. at 11. But he acknowledges that a plethora of victims is not a necessary element of a RICO claim, and that the Fourth Circuit has held "there is no *per se* rule against a RICO claim with only one victim." *Id.* (citing *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)). Indeed, a recent decision in this District upheld a RICO claim based on precisely the type of conduct alleged here: "***Put simply, Defendants allegedly turned an entire division of Plaintiff's company into their own personal piggy bank. This type of extensive, ongoing, commercial fraud falls squarely within the purview of RICO's pattern requirement***." *Cap. Lighting & Supply*, 2018 WL 3970469, at *9 (emphasis added); *see also id* at *8 ("even assuming" the alleged misconduct had only one victim, the complaint still stated a claim for relief under RICO).

Moreover, Compass was not the only entity who has been victimized by the White Defendants' fraudulent representations. In pursuit of their fraudulent schemes, they have victimized individual employees and officers of Compass (*see, e.g.*, Compl. ¶ 159 (describing harassment and defamation of Compass president Todd Mitchell)), disrupted the business relationships of Compass's clients (*see, e.g.*, *id.* ¶¶ 165-68 (describing interference with

18

SA42

contractual relationships of Colgate Company, Johnson & Johnson, Duracell, and Bush's Beans)), and defrauded the IRS in order to use this government instrumentality in a money-laundering operation (*see id.* ¶¶ 119-25). Thus, even if there were a rule that required multiple victims in order to plead a viable RICO claim – which there is not – the Complaint adequately pleads that others besides Compass have been victimized by the White Defendants' misconduct. *See CVLR Performance Horses, Inc. v. Wynne*, 524 F. App'x 924, 926 (4th Cir. 2013) (denying motion to dismiss where defendants' racketeering activity had injured not just plaintiff corporation but also victimized that corporation's individual employees and insurers).

**Third**, Daniel White argues that his illegal activities ceased when he was terminated from Compass's Board of Directors, and that there is therefore no "continuous" misconduct capable of sustaining a RICO claim. *See* Daniel Br. at 9-10. As a threshold matter, this argument fails because it contradicts the allegations in the Complaint, which specifically allege that Daniel is **continuing** to commit predicate, illegal acts against Compass. *See, e.g.*, Compl. ¶¶ 165-70 (the "Anonymous Campaign Against Compass" has been continuing "[f]rom October 2019 to present," and is specifically tied to Daniel White). Moreover, Daniel White is simply wrong as a matter of law to argue that there must be a threat of ongoing future harm in order for a RICO claim to lie. The law is abundantly clear that in order to establish a pattern of racketeering activity, a plaintiff can **either** point to ongoing, "open-ended" conduct that threatens to continue into the future **or** historical, "closed-ended" conduct that continued for a "substantial" period of time. *Starr*, 509 F. Supp. 3d at 438. "The period of time to establish this 'closed-ended' form of continuity typically must last over a year." *Id.* (citation omitted); *see also Ekstrom v. Cong. Bank*, No. 20-1501, 2020 WL 6565251, at *23 (D. Md. Nov. 9, 2020) (illegal conduct that allegedly stretched over an 18-month period was sufficient to state a viable RICO claim for a "closed-ended" scheme). Here, the

Complaint not only alleges ongoing racketeering activities, but also a historical course of misconduct by Daniel White that lasted ***more than 20 years***. *See* Compl. ¶¶ 99-182, 202-08. This is plainly sufficient to establish a "continuous" course of racketeering activity under either an "open-ended" or "closed-ended" theory of liability. *See Starr*, 509 F. Supp. 3d at 438.

Accordingly, accepting the allegations in the Complaint as true and drawing all reasonable inferences in Compass's favor, Compass has adequately pleaded RICO claims against each of the White Defendants, and their motions to dismiss must be denied.

## III.    THE STATE LAW CLAIMS ARE ADEQUATELY PLED

### A.    The White Defendants Do Not Dispute That, If Timely, the Breach of Fiduciary Duty Claim (Count XXIII) Is Adequately Pled

Aside from the statute of limitations, the White Defendants raise no arguments for dismissal of Compass's breach of fiduciary duty claim. *See* Compl. ¶¶ 352-57. For the reasons set forth above, this claim is timely, and so it must be allowed to proceed.

### B.    The Conspiracy Claims (Counts XI, XV, and XVI) Are Adequately Pled

The White Defendants advance two arguments regarding the conspiracy claims. First, they make the unremarkable argument that ***if*** (and only if) the Court dismisses the underlying tort claims, then it should dismiss the conspiracy claims as well. M&G Br. at 15; Daniel Br. at 14, 17. But, as set forth herein and in Compass's Flywheel Opposition, all of the underlying tort claims are well-pled and so there is no basis for dismissal of the conspiracy claims. *See Cap. Lighting & Supply*, 2018 WL 3970469, at *15 (denying motion to dismiss conspiracy claims where underlying tort claims were adequately pled).

Next, the White Defendants argue that the Complaint only contains "conclusory allegations" as to a "meeting of the minds" or "agreement" between the conspirators. Daniel Br. at 15, 17; M&G Br. at 15-16. But it is well-established that a complaint does not need to allege a

SA44

formal agreement between the defendants in order for a civil conspiracy claim to be adequately pled.  *See Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636, 643 (D. Md. 2014); *see also Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 731 (D. Md. 2018).  The reason for this is that "[p]roof of civil conspiracy . . . can be in the form of circumstantial evidence. A civil conspiracy can be established 'by inferences drawn from the nature of the acts complained of[,] the individual and collective interests of the alleged conspirators, the situation and relation of the parties, their motives and all the surrounding circumstances preceding and attending the culmination of the common design.'"  *Great Am. Ins. Co.*, 73 F. Supp. 3d at 643 (citation omitted).

Here, the Complaint undoubtedly pleads circumstantial evidence indicative of a conspiracy among all the Defendants.[7]  The Complaint pleads specific facts showing:  Michael and Daniel White abused their positions within Compass to enrich one another, their family members and friends in the same ways (Compl. ¶¶ 99-143, 171-82); Michael White doctored books and records to cover up not just his own tracks, but also those of his brother, Daniel (*id.*); Michael White has provided financial support to the IT lockout spearheaded by his son, George White (*id.* ¶¶ 156-57); George has in turn used the IT lockout to help cover up the wrongdoing of his father and uncle (*id.*); all the White Defendants have worked toward a common goal of undermining Compass and damaging its relationship with its clients, which is a goal shared by the Flywheel Defendants (*id.* ¶¶ 75-90, 144-70); Daniel White has an undisclosed financial interest in Flywheel Digital LLC

---

[7]        The White Defendants contend the Complaint does not plead facts sufficient to establish that they conspired with the Flywheel Defendants to misappropriate trade secrets and unfairly compete with Compass.  *See* M&G Br. at 15-16, Daniel Br. at 14-15.  This is not the case, but even if it were, the Court must still deny their motions to dismiss as to Count XVI because there is no serious dispute that the Complaint contains well-pled allegations that the White Defendants conspired ***with one another*** to defraud Compass.  *See Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 821 (D. Md. 2005) (plaintiff does not have to plausibly allege all defendants conspired with all other defendants in order to state a viable claim; plausible allegations of "different combinations of two or more persons conspiring to fraudulently conceal" are sufficient).

SA45

("Flywheel") (*id.* ¶¶ 81, 89, 202-08); the White Defendants have provided material financial support to the Flywheel Defendants (*id.*); and Daniel White abused his position as acting General Counsel to prevent Compass from discovering or addressing the theft of trade secrets and unfair competition by the Flywheel Defendants (*id.*). At this stage in the proceedings, where all these facts must be accepted as true and all reasonable inferences that can be drawn from them construed in Compass's favor, the Complaint plainly pleads sufficient circumstantial evidence to infer the existence of a civil conspiracy. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.

### C. The Fraudulent Concealment/Fraud Claim (Count X) Is Adequately Pled

The White Defendants contend that Compass's fraudulent concealment/fraud claim is inadequately pled because the Complaint supposedly does not plead the necessary element of "reliance" on their deceitful representations and omissions. M&G Br. at 14; Daniel Br. at 15-16. This argument strains credulity. The Complaint alleges, with specificity, how the White Defendants doctored Compass's books and records in order to make their theft of millions of dollars' worth of Compass's funds appear to be legitimate business expenses. *See* Compl. ¶¶ 99-182. It is self-evident that Compass would not have willingly funneled ***millions of dollars*** to people who were not employed by Compass, and companies not engaged by Compass, had the White Defendants not fraudulently misrepresented and concealed where those funds were going or how they were being used. The facts pled in the Complaint are more than sufficient to establish the element of reliance for Compass's fraudulent concealment/fraud claim, especially given that "reliance is a fact-intensive inquiry" not suitable for resolution on a motion to dismiss. *Carlucci v. Han*, 907 F. Supp. 2d 709, 741 (E.D. Va. 2012).

Rather than addressing the allegations referenced above, the White Defendants focus their attention on ***one*** of the many fraudulent misrepresentations and omissions underlying Count X of

22

SA46

the Complaint.[8]  *See* M&G Br. 14; Daniel Br. at 15-16.  Specifically, the White Defendants contend the element of reliance is inadequately pled with regard to Daniel White's fraudulent omission of the fact that he had a financial interest in Flywheel when – in his capacity as acting General Counsel to Compass – he advised Compass's CEO not to pursue any legal action against the Flywheel Defendants in 2014 and 2016.[9]  *See id.*; *see also* Compl. ¶¶ 81, 89.  The White Defendants' sole basis for this argument is that a ***2013 organizational chart*** excerpted in the Complaint identifies Daniel White as a "Senior Advisor" to Compass, as opposed to assigning him an explicitly legal title such as "General Counsel" or "Senior Legal Advisor."  Daniel Br. at 16. According to the White Defendants, this "disproves" the allegation that Daniel White – who is a barred attorney in the State of Maryland – was acting as legal counsel when he dispensed his fraudulent advice to Compass's CEO and means that any reliance on that advice was *de facto* unreasonable.  *See id.*

But the fact that Daniel White's job title in ***2013*** did not specifically identify him as a lawyer in no way contradicts or disproves the allegation in the Complaint that he was Compass's acting General Counsel in ***2014 and 2016***.  *See* Compl. ¶ 81.  It certainly does not disprove the allegation that he was asked – in his capacity as a barred attorney, as well as an officer of director and Compass – to provide ***legal advice*** on whether Compass should pursue action against the

---

[8]      The White Defendants' fixation appears to be based on the fact that this act of reliance is specifically discussed under the heading "Count X," whereas the other acts of reliance are pled in the hundreds of paragraphs preceding the heading "Count X," which were then incorporated by reference.  *See* Compl. ¶ 307.

[9]      In a footnote, Daniel White contends there are "no facts" in the Complaint demonstrating he had a financial interest in Flywheel.  Daniel Br. at 16 n.6.  Not so.  The Complaint pleads with specificity that Daniel White made tens of thousands of dollars in unexplained payments to the founders of Flywheel during that company's early stages.  *See* Compl. ¶¶ 203, 205.  Compass is entitled to the "reasonable inference" that Daniel White was an investor in Flywheel.  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440.

Flywheel Defendants, and fraudulently omitted that he had a financial interest in Flywheel when providing that advice. *See id.* ¶¶ 81, 89. At this stage in the proceedings, those allegations must be accepted as true, and they establish a viable claim for fraud.

Next, still focusing on this one and only allegation of fraud, and not the dozens of other allegations underlying Count X, Daniel White contends that his personal financial interest in Flywheel was not a "material fact" necessary to be disclosed, and that Compass has not pled facts sufficient to prove he would have advised Compass any differently had he not had a conflict of interest. *See* Daniel Br. at 16-17. But as a matter of law, if an attorney dispensing legal advice has a conflict of interest, then they have a duty to disclose that conflict of interest. *See Homa v. Friendly Mobile Manor, Inc.*, 612 A.2d 322, 327 (Md. Ct. Spec. App. 1992) ("once an attorney-client relationship exists the attorney owes the client certain fiduciary duties including the duty to disclose any conflicts of interest") (citing *Crest Inv. Tr., Inc. v. Comstock*, 327 A.2d 891, 904-06 (Md. Ct. Spec. App. 1974)). Daniel White cannot escape liability for his fraudulent omission by claiming his breach of that legal duty was harmless, especially when that would require the Court to resolve a factual dispute over what advice Daniel White would have dispensed ***but for*** his conflict of interest. *Todman v. Mayor & City Council*, 488 F. Supp. 3d 218, 223 (D. Md. 2020) ("'The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint,' not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'") (Russell, J.) (citation omitted).

Daniel White also argues that it is unlikely Compass suffered any damages by not taking immediate legal action against the Flywheel Defendants in 2014 and 2016. *See* Daniel Br. at 16. But the Complaint alleges that the Flywheel Defendants stole valuable trade secrets from Compass, that Daniel White self-interestedly and fraudulently dissuaded Compass from pursuing legal action

SA48

against the Flywheel Defendants, and that as a result Compass faced unfair competition for years longer than it would have done otherwise. *See* Compl. ¶¶ 81-90. Accepting these allegations as true, and drawing all reasonable inferences in Compass's favor, as the Court must, it is more than plausible that Compass suffered damages as a result of Daniel White's fraudulent legal advice. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 570 (D. Md. 2012) (denying motion to dismiss fraud claim where it was "reasonable to infer that but for the alleged misrepresentation" plaintiffs might have been in a more financially advantageous position).

**D.      The Aiding and Abetting Claim (Count XXI) Is Adequately Pled**

"In Maryland, a person may be held liable for aiding and abetting 'if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort.'" *Cap. Lighting & Supply*, 2018 WL 3970469, at *14 (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995)). The White Defendants contend that the Complaint contains no well-pled allegations that the Defendants knowingly encouraged or assisted one another in any of their tortious activity. *See* Daniel Br. at 17-18. For the reasons already set forth above, this is untrue. The Complaint pleads in detail how the White Defendants cooperated to enrich one another at Compass's expense and conceal one another's wrongdoing; and how the White Defendants provided financial support to the Flywheel Defendants as they engaged in their unfair competition and helped protect the Flywheel Defendants from having their theft of Compass's trade secrets uncovered. *See* Compl. ¶¶ 81, 89, 99-182, 202-08. At this stage in the proceedings, those allegations are sufficient to state a claim under an aiding and abetting theory of liability. *See Cap. Lighting & Supply*, 2018 WL 3970469, at *15 (denying motion to dismiss aiding and abetting claim where the complaint alleged knowing, substantial assistance and, "at least at this stage of the proceeding, Plaintiff's allegations are entitled to all reasonable inferences").

SA49

Furthermore, while Michael White contends that there are no well-pled facts that suggest he and George White personally aided and abetted the Flywheel Defendants' theft of trade secrets, this is also not the case. The Complaint specifically alleges that on December 1, 2015, Michael White used a fraudulently issued check to steal funds from Compass and transfer them to the Flywheel Defendants to support their unfairly competing enterprise. *See* Compl. ¶ 204. While Michael contends this fraudulently issued check is insufficient to prove that he knew the Flywheel Defendants were building their business based on trade secrets stolen from Compass, this is plainly a factual dispute, and at this stage in the proceedings Compass is entitled to have all reasonable factual inferences drawn in its favor. Similarly, and as set forth above, the Complaint alleges that George White spearheaded the IT lockout and has been destroying Compass's records in part to conceal Michael and Daniel White's previous illegal activity, including their collusion with the Flywheel Defendants. *See id.* ¶¶ 144-57. Again, at this stage in the proceedings, and especially before Compass has been able to conduct discovery, Compass is entitled to have all reasonable factual inferences drawn in its favor. Accordingly, the White Defendants' motions to dismiss must be denied.

### E. The Conversion Claim (Count XXII) Is Adequately Pled

The White Defendants do not dispute that the conversion claim against George White is adequately pled, and they have not sought to dismiss that claim. *See* M&G Br. at 4. Instead, they move to dismiss the claim solely as to Michael White, falsely claiming that the only fact in the Complaint tying Michael White to the IT lockout is his familial relationship with George White. *See id.* at 16-17. Not so. The Complaint alleges that Michael White was himself an active participant in the IT lockout, an allegation that is supported by the well-pled fact that Michael White has been ***paying*** for the web domain that George White wrongfully seized, and an allegation that is eminently plausible given the well-pled facts that the White Defendants have been using

the IT lockout to destroy incriminating evidence of Michael White's own wrongdoing while a director of Compass. *See* Compl. ¶¶ 156-57. The conversion claim against Michael White is only required to satisfy the notice pleading requirements of Rule 8(a) and, drawing all plausible inferences in Compass's favor, the claim is plainly adequately pled. *See Potomac Conf. Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 771-72 (D. Md. 2014) (where plaintiff pled that defendant had wrongfully taken information from electronic database, and had refused plaintiff's requests to return that information, this was sufficient to state a claim for conversion); *Noel v. PACCAR Fin. Corp.*, No. 18-3936, 2021 WL 4918059, at *9 (D. Md. Oct. 21, 2021) (conversion claim only requires the complaint plead facts sufficient to show the plaintiff had a right to certain property, and the defendant intentionally took possession of that property "without authority or permission").

## IV.    IF THE COURT DISMISSES THE RICO CLAIMS, IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

In the event the RICO claims are dismissed – which, for the reasons set forth above, they should not be – the Court should exercise supplemental jurisdiction over Compass's state law claims, especially because there is a well-pled claim for trade secret misappropriation against the Flywheel Defendants under the federal Defend Trade Secrets Act, which will continue to proceed before this Court, and overlaps with the state law claims against the White Defendants. "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. Among the factors that inform this discretionary determination are . . . considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citation omitted). By the time the Court has ruled on the multiple pending dispositive motions, it will have gained considerable familiarity with the underlying factual and legal issues in this case, which weighs in favor of retaining jurisdiction. *See Hall v. Greystar*

27

SA51

*Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 537 (D. Md. 2016) (holding that, even though "the parties have not yet commenced discovery and that a trial schedule has not been established," the court's familiarity with the issues warranted exercise of supplemental jurisdiction over state law claims after federal claim was dismissed).

## CONCLUSION

For all the reasons stated herein, the White Defendants' motions to dismiss should be denied in their entirety.

Dated: May 16, 2022

Respectfully submitted,

*/s/ Troy. S. Brown, Esq.*
Troy S. Brown, Esq. (admitted pro hac vice)
Rachel A. Ward, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103
troy.brown@morganlewis.com
rachel.ward@morganlewis.com
T. (215) 963-5000
F. (215) 963-5001

Steven A. Luxton, Esq. (MD Bar No. 9812160173)
Natalie A. Bennett, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue
Washington, DC 20004-2541
steven.luxton@morganlewis.com
natalie.bennett@morganlewis.com
T. (202) 739-5559
F. (202) 739-3001

Susan K. Stradley, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street
Suite 4000
Houston, TX 77002
susan.stradley@morganlewis.com
T. (713) 890-5000
F. (713) 890-5001
*[continued on next page]*

SA52

James J. Kritsas, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
110 North Wacker Drive
Chicago, IL 60606
james.kritsas@morganlewis.com
T. (312) 324-1000
F. (312) 324-1001

Michael J. Ableson, Esq. (admitted pro hac vice)
**Morgan, Lewis & Bockius LLP**
101 Park Avenue
New York, NY 10178
michael.ableson@morganlewis.com
T. (212) 309-6000
F. (212) 309-6001

Rod J. Rosenstein, Esq. (MD Bar No. 14793)
Mark S. Brown, Esq. (Federal Bar No. 09100)
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Suite 900
Washington DC 20006-4707
rrosenstein@kslaw.com
mbrown@kslaw.com
T. (202) 626-9220
F. (202) 626-3737

*Counsel for Plaintiff Compass Marketing, Inc.*

SA53

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 16, 2022 I electronically served the foregoing documents by ECF on all counsel of record and a courtesy copy by mail to:

Clerk's Office
Attn: Judge Russell
United States District Court
101 W. Lombard St., 4th Floor
Baltimore, MD 21201


*/s/ Troy S. Brown, Esq.*
Troy S. Brown, Esq.

SA54

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **COMPASS MARKETING, INC.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **FLYWHEEL DIGITAL LLC,** *et al.,* | § | |
| **Defendants.** | § | **Case Number: 1:22-cv-00379-GLR** |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PROPOSED ORDER

UPON CONSIDERATION of Defendants Daniel White, Michael White, and George White's (the "White Defendants") Motions to Dismiss it is SO ORDERED this day _____ of _____, 2022, that

☐ The White Defendants' Motions are DENIED

   or

☐ The Court GRANTS leave for Plaintiff to file an Amended Complaint to address any

counts of the Complaint that are dismissed in whole or in part.

_____
The Honorable George L. Russell, III
United States District Judge

SA55