# 23-1324

# United States Court of Appeals
## for the
# Fourth Circuit

COMPASS MARKETING, INC.,

*Plaintiff/Appellant*,

– v. –

FLYWHEEL DIGITAL LLC; JAMES COLUMBUS DIPAULA, JR.;
PATRICK MILLER; DANIEL J. WHITE; MICHAEL WHITE;
GEORGE WHITE; ASCENTIAL PLC,

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# REPLY BRIEF OF APPELLANT

Stephen B. Stern
Michael Marinello
Meagan C. Borgerson
KAGAN STERN
 MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900

*Counsel for Appellant*

 COUNSEL PRESS ● VA – (804) 648-366

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

ARGUMENT .......................................................................................1

I.    THE DISTRICT COURT ERRED IN DISMISSING THE FEDERAL CLAIMS AGAINST THE FLYWHEEL DEFENDANTS ..............................................................................1

    A.    COMPASS'S DTSA CLAIM IS NOT TIME-BARRED ....................1

        1.    DEPARTING EMPLOYEES DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT IN 2014 ............................................2

        2.    THE 2015 PRESENTATION DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT ...................................................9

        3.    ADDITIONAL EMPLOYEE DEPARTURES DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT IN 2016 ...........................11

    B.    COMPASS'S RICO CLAIMS ARE NOT TIME-BARRED .............12

    C.    THE FLYWHEEL DEFENDANTS' ARGUMENTS CONCERNING INQUIRY NOTICE, THE DISCOVERY RULE, AND FRAUDULENT CONCEALMENT ARE MERITLESS ..............................................................................14

        1.    INQUIRY NOTICE ..................................................14

        2.    DISCOVERY RULE .................................................14

        3.    FRAUDULENT CONCEALMENT.........................15

    D.    THE DISTRICT COURT IMPROPERLY DISMISSED THE CLAIMS AGAINST ASCENTIAL ....................................16

II.    THE LEGAL THEORY OF A RICO ASSOCIATION-IN-FACT ENTERPRISE IS PROPERLY BEFORE THE COURT..............................18

III.    THE DISTRICT COURT ERRED IN HOLDING COMPASS FAILED TO ALLEGE AN ENTERPRISE ..................................................21

i

A.      COMPASS PLED A COMMON PURPOSE ....................................23

B.      COMPASS PLED A CONTINUING UNIT.......................................25

C.      COMPASS    PLED    SEPARATENESS    OF    THE
        ENTERPRISE AND A PATTERN OF RACKETEERING
        ACTIVITY ...................................................................................26

D.      COMPASS A PATTERN OF RACKETEERING
        RELATED TO GEORGE WHITE ...................................................27

IV.     COMPASS  SHOULD  HAVE  BEEN  GRANTED  LEAVE  TO
        AMEND...............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Allstate Ins. Co. v. Weir*,
  No. 5:07-CV-498-D, 2008 U.S. Dist. LEXIS 91270
  (E.D.N.C. Nov. 10, 2008) ...................................................................................19

*Atl. Richfield Co. v. Sybert*,
  295 Md. 347 (1983) ..............................................................................................4

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ...........................................................................28

*Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v.
  Four-C-Aire, Inc.*,
  929 F.3d 135 (4th Cir. 2019) .............................................................................2

*Birmingham v. PNC Bank, N.A.*,
  No. 8:2016cv00198, 2016 WL 3855686 (D. Md. July 15, 2016) .......................10

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
  920 F.3d 560 (8th Cir. 2019) ..................................................................... 1-2, 9

*Conner v. Lemelle*,
  298 So. 3d 361 (La. App. 2020) ........................................................................6

*Dual Inc. v. Lockheed Martin Corp.*,
  383 Md. 151 (2004) .........................................................................................1, 7

*Edwards v. City of Goldsboro*,
  178 F.3d 231 (4th Cir. 1999) ..........................................................................28

*Farmers All. Ins. Co. v. Commercial Union Ins. Co.*,
  No. 91-7125, 1992 U.S. App. LEXIS 17705 (10th Cir. July 29, 1992)..............28

*Frederick Rd. Ltd. Pship*,
  360 Md. 76 (2000) ...........................................................................................15

*Greer v. Gen. Dynamics Info. Tech.*,
  808 F. App'x 191 (4th Cir. 2020) ....................................................................20

*Hope Chung v. Intellectsoft Grp. Corp.*,
  No. 21-cv-03074-JST, 2022 U.S. Dist. LEXIS 243273
  (N.D. Cal. July 13, 2022)......................................................................... 2, 3, 11

*Gilbert v. United States BATFE*,
  805 F. App'x 198 (4th Cir. 2020) .......................................................20

*Lumsden v. Design Tech Builders, Inc.*,
  358 Md. 435 (2000) ...................................................................5, 12

*Manning v. Caldwell*,
  930 F.3d 264 (4th Cir. 2019) .................................................... 20, 21

*Maxwell v. Gallagher*,
  709 A.2d 100 (D.C. 1998) ...............................................................4

*Meyers v. Lamer*,
  743 F.3d 908 (4th Cir. 2014) ..........................................................19

*Nix v. Welch & White, P.A.*,
  55 F. App'x 71 (3d Cir. 2003) ........................................................28

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest
  Labs., Inc. (In re Celexa & Lexapro Mktg. & Sales Practices Litig.)*,
  65 F. Supp. 3d 283 (D. Mass. 2014) ................................................22

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ...........................................................28

*Pilz v. FDIC*,
  No. 96-2243, 1997 U.S. App. LEXIS 16161 (4th Cir. July 1, 1997) ..................14

*Poffenberger v. Risser*,
  290 Md. 631 (1981) ......................................................................15

*Rojas v. Delta Airlines, Inc.*,
  425 F. Supp. 3d 524 (D. Md. 2019) .................................................25

*Seney v. Rent-A-Center, Inc.*,
  738 F.3d 631 (4th Cir. 2013) ..........................................................20

*Sihler v. Fulfillment Lab, Inc.*,
  No. 3:20-cv-01528-H-MSB, 2021 U.S. Dist. LEXIS 67685
  (S.D. Cal. Apr. 7, 2021) ................................................................22

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
  71 F.3d 119 (4th Cir. 1995) ...........................................................16

*Tan v. Quick Box, LLC*,
  No. 3:20-cv-01082-H-DEB, 2021 U.S. Dist. LEXIS 67791
  (S.D. Cal. Apr. 7, 2021) ................................................................22

iv

*United States v. Griffin*,
   660 F.2d 996 (4th Cir. 1982) ................................................. 23, 24, 27

*United States v. Palacios*,
   677 F.3d 234 (4th Cir. 2012) ................................................. 25

*United States v. Tillett*,
   763 F.2d 628 (4th Cir. 1985) ................................................. 26

*United States v. Under Seal*,
   942 F.3d 159 (4th Cir. 2019) ................................................. 19-20

*White v. Bateman*,
   Case No. C-02-CV-21-000778
   (Cir. Ct. Anne Arundel County, Maryland) ................................. 28

*WW, LLC v. Coffee Beanery, Ltd.*,
   No. WMN-05-3360, 2012 U.S. Dist. LEXIS 121347
   (D. Md. Aug. 27, 2012) ........................................................ 19, 22, 23

*Zero Friction LLC v. Bali Leathers, Inc.*,
   2023 WL 3792408 (N.D. Ill. June 2, 2023) ................................. 2

**Statutes & Other Authorities:**

18 U.S.C. § 1832 .................................................................... 18

18 U.S.C. § 1832(a) ................................................................ 18

18 U.S.C. § 1836(d) ................................................................ 15

18 U.S.C. § 1839(5) ................................................................ 17

Fed. R. Civ. P. 8 .................................................................... 23

## ARGUMENT

## I.   THE DISTRICT COURT ERRED IN DISMISSING THE FEDERAL CLAIMS AGAINST THE FLYWHEEL DEFENDANTS

Like the district court did, the Flywheel Defendants ask this Court to disregard Compass's allegations and to stack myriad inferences improperly drawn against Compass in an effort to justify dismissal of the federal claims.  When Compass's allegations are properly accepted as true and all inferences are correctly drawn in Compass's favor, it is erroneous to conclude Compass discovered or was on inquiry notice of trade secret misappropriation more than three or four years prior to the filing of its DTSA and RICO claims.

### A.   COMPASS'S DTSA CLAIM IS NOT TIME-BARRED

Claiming Compass was on inquiry notice of trade secret misappropriation from 2014-2016, the Flywheel Defendants' arguments suffer the same infirmities as the lower court's superficial opinion.  They misconstrue the Complaint's allegations, draw inferences against Compass, and attempt to draw parallels to inapposite cases. Moreover, they offer no authority to support the notion that an employer must assume and investigate the misappropriation of trade secrets based solely on the departure of certain employees or the loss of certain clients over an unspecified number of years.

The Flywheel Defendants rely repeatedly on *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 175 (2004), *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920

1

F.3d 560, 565-66 (8th Cir. 2019), and *Zero Friction LLC v. Bali Leathers, Inc.*, 2023 WL 3792408, at \*5 (N.D. Ill. June 2, 2023). Each of these cases is factually distinguishable (*see infra*), and each was adjudicated at summary judgment, two after discovery (*CMI Roadbuilding; Zero Friction*) and the other on a converted motion to dismiss (*Dual*). Compass, in contrast, never had the opportunity to conduct discovery because its DTSA claim was dismissed based solely on the Complaint, without giving Compass the benefit of reasonable inferences, in violation of the principle that "Plaintiffs are not ordinarily required to plead allegations relevant to potential affirmative defenses to an asserted claim." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019).

### 1. DEPARTING EMPLOYEES DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT IN 2014

The Flywheel Defendants assert Compass was on inquiry notice of trade secret theft in 2014 when DiPaula and Miller resigned from Compass. They do not cite, however, and Compass is not aware of, *any* authority holding that the departure of employees imposes a duty on an employer to assume and investigate *trade secret misappropriation*. *Cf. Hope Chung v. Intellectsoft Grp. Corp.*, No. 21-cv-03074-JST, 2022 U.S. Dist. LEXIS 243273, \*39 (N.D. Cal. July 13, 2022) (rejecting limitations defense to DTSA claim on grounds that "[a] plaintiff is not required to

investigate a potential claim for misappropriation unless it suspects or has 'reason to suspect' that the defendant could be *misappropriating its trade secrets*. . .") (emphasis added). Nothing in the law countenances a conclusion that trade secret misappropriation must be investigated upon employee departures, even if the employer might suspect other claims. *Id*. at 41.

Indeed, as alleged in the Complaint, when Compass's CEO, John White, sought advice from Compass's General Counsel, Daniel White, he did so "[w]ith respect *solely* to the question concerning whether Compass should seek to enforce the *non-competition provisions* in the DiPaula Agreement and Miller Agreement, and with *no corresponding knowledge or suspicion* that DiPaula and Miller had stolen Compass's trade secrets." JA41, ¶ 81 (emphasis added). The Flywheel Defendants characterize this interaction as Compass "mak[ing] a conscious choice . . . to forego legal action." ECF 39 at 19. In other words, the Flywheel Defendants contend inquiry notice was established because litigation regarding non-compete agreements (not trade secrets) may have been contemplated. *Id.* at 5, 19. As noted above, this contention is not supported by law. Even if Compass somehow was on inquiry notice, Daniel, a co-conspirator, stated in that conversation there was no need to pursue claims against DiPaula, Miller, and their new company because "Compass [had] such a substantial competitive advantage in comparison to . . . Flywheel[,]" which was "without" Compass's "trade secrets and proprietary information and

3

know how." JA41 ¶¶ 81. Daniel's statement about the Flywheel Defendants not possessing Compass's trade secrets or other information is significant because, if false, it indicates fraudulent concealment perpetrated by a co-conspirator, and, if true, it should be inferred that Daniel conducted some investigation to reach his conclusion. Either way, Compass was not on notice (inquiry or otherwise) and the statute of limitations did not start to run.

In addition, or in the alternative, Compass cannot be bound by this conversation because of Daniel's undisclosed conflict of interest with the Flywheel Defendants. JA41 ¶ 81. An attorney bears the burden to show a client has waived a conflict. *Atl. Richfield Co. v. Sybert*, 295 Md. 347, 356 (1983). The attorney must demonstrate he has disclosed the "full significance of the representation of conflicting interests . . . to the client so that he may make an intelligent decision before giving his consent." *Id*. When there is no informed consent (like here), the appropriate remedy is to set aside the transaction (i.e., Daniel's advice and/or efforts to misdirect Compass). *See id.* (stating, unless requirements of full disclosure and informed consent are satisfied, "ordinarily a transaction will be set aside"); *Maxwell v. Gallagher*, 709 A.2d 100, 101-03 (D.C. 1998) (affirming rescission of stock transfer "as the tangible product of the breach of fiduciary duty" that stemmed from failure to disclose conflicts). Thus, without the necessary disclosure by Daniel,

4

Compass cannot be found to have made an informed, conscious choice based on the conversation between John and Daniel.

Nor can one conclude from the face of the Complaint that Compass would have discovered the trade secret misappropriation from any investigation in 2014 (especially where Compass alleged it did not uncover such theft until 2020 during its investigation of the White Defendants' other misconduct). *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 446 (2000) (limiting inquiry notice to "an investigation which . . . would have led to *knowledge of the alleged tort*.'") (emphasis added). Compass alleged it discovered the Digital Grocery Presentation after January 20, 2020, which revealed the misappropriation of trade secrets in November 2015. JA19-20. This had not even occurred in 2014, making it impossible to discover at that time. As the Complaint reflects, to this day and until discovery is conducted, Compass still does not know exactly when or how DiPaula and Miller initially misappropriated the trade secrets at issue. *See*, *e.g.*, JA59 ¶ 189; 42 ¶ 85.

The Flywheel Defendants further assert Compass "was on notice to investigate why and how P&G . . . suddenly 'terminated its engagement with Compass.'" ECF 39 at 20. Nothing in the Complaint referred to P&G "suddenly" terminating anything; the Flywheel Defendants use the word "suddenly" to misconstrue Compass's allegations. Rather, the Complaint only alleged P&G was a

long-time client that DiPaula, Miller, and Alex McCord were "interviewing . . . for a specific eCommerce engagement" and that, after DiPaula and Miller left, McCord "recommended that Compass no longer pursue the expansion of the P&G relationship into the eCommerce space" after "P&G . . . became unresponsive." JA61 ¶ 194-96.  The Complaint otherwise alleged that "[o]n information and belief, DiPaula and Miller falsely told P&G representatives that Compass was exiting the eCommerce space, and that Flywheel was being set up to service the P&G account" and that "P&G terminated its [eCommerce] engagement with Compass shortly thereafter, and upon information and belief contracted with Flywheel for eCommerce service."  JA61 ¶ 197.

These allegations reflect what Compass is able to allege now after discovering the trade secret theft in January 2020.  *Conner v. Lemelle*, 298 So. 3d 361, 365 n.1 (La. App. 2020) (explaining that "upon information and belief" signals the plaintiff is drawing reasonable inferences from facts).  Compass could have easily viewed P&G's termination to be a result of ordinary competition, which is the inference to which Compass is entitled based on the Complaint, not the inference drawn against Compass.  Moreover, the Flywheel Defendants do not explain how Compass would have discovered in 2014 that P&G engaged Flywheel (with such information typically protected throughout the industry by non-disclosure agreements), let alone

6

how any investigation into P&G's transition would have revealed DiPaula and Miller stole Compass's trade secrets (another inference drawn against Compass).

The Flywheel Defendants cite *Dual* for the notion that trade secret claims are "time-barred [where] '[plaintiff's] knowledge of the termination of its [client] contract was sufficient to place [plaintiff] on notice to investigate how another company was able to assume the [client] contract so quickly." ECF 39 at 20. Dual sued Lockheed for terminating the parties' contract and assuming a government contract between Dual and the Air Force, which the Air Force terminated under questionable circumstances. *Dual*, 385 Md. at 157-59. Dual knew contemporaneously that Lockheed assumed its government contract.[1] *Id*. The Complaint does not allege any such circumstances here or that Compass had any contemporaneous suspicion that Flywheel had usurped the P&G eCommerce opportunity. Finding Compass should have had such a suspicion would be illogical for the reasons discussed above and with Compass alleging DiPaula advised "multiple Compass employees that Flywheel would *not be competing with Compass in any respect*." JA61 ¶ 197 (emphasis added).[2] Plus, as explained in Compass's

[1] Dual's knowledge of Lockheed assuming the Air Force contract makes sense given that aspects of government contracts typically are publicly available, unlike contracts obtained by competitors in private industry.

[2] This allegation alone rebuts Appellees' repeated contentions that Compass was aware of Flywheel's competition, to the extent such knowledge even is relevant to trade secret misappropriation.

opening brief, the district court erroneously misconstrued factual allegations based on subsequently discovered events to find Compass had earlier knowledge of such events. *Dual* is inapposite and does not support finding that the loss of prospective additional P&G business imposed a duty to investigate potential trade secret theft by DiPaula and Miller in 2014.

The Flywheel Defendants (like the district court) further misconstrue the Complaint by arguing Compass should have known Flywheel poached its other clients. ECF 39 at 20. Not only is this conclusion contradicted by the allegations and inferences noted above, but the Complaint actually alleges: "On information and belief, using Compass's trade secrets, Flywheel has poached a long list of Compass eCommerce clients." JA61 ¶ 193. The phrases "on information and belief" and "has poached" clearly reflect Compass's belief *now*, following its 2019-20 investigation, that clients lost over the years since 2014 have been taken by Flywheel by using Compass's trade secrets and other information. The Complaint does not allege when any of these other clients left Compass or when Compass learned Flywheel had contracted with them. When read in full context and construed in Compass's favor, the foregoing allegations do not show Compass was on notice or suspicious, and the Flywheel Defendants have provided no authority for the proposition that a company has a duty to investigate trade secret misappropriation following the loss of each contract after two employees resign.

8

### 2. THE 2015 PRESENTATION DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT

Pointing to Miller's article and presentation, the Flywheel Defendants claim that, based on DiPaula's and Miller's departures and "with the knowledge it was already losing clients," Compass was "bound [in 2015] to investigate its former employees-turned-competitors, including at the very least by reviewing publicly available information about Flywheel." ECF 39 at 21-22. It is unclear from the face of the Complaint, however, when or how the article or presentation first became available online. From the Complaint, one only knows they were not discovered by Compass until January 2020. To infer they were available earlier is to draw an improper inference against Compass.

The Flywheel Defendants cite *CMI Roadbuilding* for the notion that a DTSA claim was "time-barred where defendant 'established itself as a direct competitor' to plaintiff 'almost as soon as it began operating.'" ECF 39 at 22. However, in *CMI Roadbuilding*, decided on summary judgment after discovery, the court relied heavily on the fact that, almost immediately after the defendant became a vendor of the plaintiff's same replacement parts, the plaintiff sent the defendant a letter "indicating a possible problem existed with [the defendant] and its engineering documents" and warning the defendant not "to use them without authorization." 942 F.3d at 565. Based on this and other distinguishing facts, the court found the DTSA claim was time-barred. *Id.* There is no comparable allegation in the Complaint.

9

Rather, the Complaint is replete with allegations reflecting Compass lacked suspicion regarding trade secret misappropriation until its investigation. *See* ECF 30 at 15-18 (summarizing examples of allegations in the Complaint).

The Flywheel Defendants also cite *Birmingham v. PNC Bank, N.A.*, No. 8:2016cv00198, 2016 WL 3855686 (D. Md. July 15, 2016), arguing the Profitero article and Digital Grocery Presentation were "neither unknowable nor undiscoverable during the limitations period." ECF 39 at 22. *Birmingham* involved a mortgagor's misrepresentation claims brought in 2016 against the mortgagee bank after the bank made false statements in 2010 and then foreclosed on the mortgagor's home. 2016 WL 3855686, at *2. While acknowledging he knew the bank's statements were false in 2010-11, the mortgagor argued he did not know the exact nature of his claims until 2014 when the bank provided him with "his mortgage loan payment transaction journal" in 2014. *Id*. at *5. The court found the journal of the mortgagor's own loan payments was "neither unknowable nor undiscoverable" and "could have been obtained at any time" by him. *Id.* at *12. In contrast, the relevant facts here were not readily available to Compass and, as alleged, were actively being concealed.

10

### 3.   ADDITIONAL EMPLOYEE DEPARTURES DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT IN 2016

The Flywheel Defendants contend certain eCommerce Department employee departures in 2016 "required [Compass] to investigate where these employees ended up and whether they took proprietary information." ECF 39 at 22-23. As with DiPaula's and Miller's departures in 2014, the Flywheel Defendants do not cite, and Compass is not aware of, *any* authority that holds employee departures impose a duty on the former employer to investigate where such employees "ended up," let alone assume and investigate the unsuspected theft of trade secrets. *Cf. Hope Chung*, 2022 U.S. Dist. LEXIS 243273 at *39.

The Flywheel Defendants conflate investigating potential violations of non-compete or non-solicitation agreements with potential trade secret theft. To require a company to investigate where departed employees go *and* whether they misappropriated trade secrets, absent any suspicion of misappropriation, is to impose a new, heightened standard of inquiry notice and an untenable burden unsupported by law. Such a burden is particularly onerous and improper where Compass's General Counsel, a co-conspirator (albeit unknown at the time) specifically stated the Flywheel Defendants did not have Compass's trade secrets and know-how. JA41 ¶ 81.

11

Nor can one discern from the face of the Complaint that Compass would have discovered the trade secret misappropriation, even assuming it had an obligation to investigate in 2016. To this end, Compass's General Counsel (Daniel), Vice President of Operations and Comptroller (Michael), and IT Manager (George), all of whom presumably would spearhead or be substantially involved in the investigation, are among the co-conspirators in this case. It is telling that Compass did not discover the misconduct at issue in this litigation until after they left the company. Thus, with co-conspirator Defendants holding such key positions, even if Compass had been on inquiry notice, no reasonable inference can be made that Compass would have discovered information justifying this litigation contemporaneously.[3] *Lumsden*, 358 Md. at 446 (limiting inquiry notice to "an investigation which . . . would have led to knowledge of the alleged tort").

### B.    COMPASS'S RICO CLAIMS ARE NOT TIME-BARRED

The Flywheel Defendants assert Compass's RICO claims (Counts III and IV) are time-barred because Compass "knew or should have known it was losing business" in 2014 or no later than 2016. The entire substance of their argument is that "[T]he limitations period for Compass's RICO claims began as soon as Compass

---

[3] The inferences drawn from the roles Daniel, Michael, and George would have in any investigation and the obstacles they presented to Compass discovering misconduct apply to all contentions regarding what Compass should have discovered contemporaneously.

knew or should have known it was losing business and market share" and that "Compass knew it was losing . . . at least one client [P&G] "shortly" after [DiPaula and Miller] left." ECF 39 at 24.

As explained in Section I(A)(1), *supra*, nothing in the Complaint alleged Compass suspected wrongdoing in 2014 due to the additional P&G business not coming to fruition. A lost client does not trigger a duty to assume and investigate potential RICO claims, and the Flywheel Defendants provide no authority to that effect. Companies lose and gain clients all the time. Surely the Flywheel Defendants are not suggesting each time a company loses a client, even after two employees leave the company to compete, the company should suspect racketeering. The Flywheel Defendants further fail to explain how investigating DiPaula and Miller in 2014 would have uncovered Daniel and Michael's racketeering activity, or any of the numerous predicate acts that had not yet occurred.

Nor does the loss of other Compass clients support the Flywheel Defendants' position, as the Complaint provided no context as to when or under what circumstances the other clients left. It is impossible to conclude from the face of the Complaint that the loss of those clients imposed a duty on Compass between 2014-2016 to investigate the Flywheel Defendants.

## C.  THE FLYWHEEL DEFENDANTS' ARGUMENTS CONCERNING INQUIRY NOTICE, THE DISCOVERY RULE, AND FRAUDULENT CONCEALMENT ARE MERITLESS

### 1.  INQUIRY NOTICE

The Flywheel Defendants summarily argue Compass conflated inquiry notice and actual knowledge, without any support.  They do nothing to refute the litany of allegations from the Complaint that allege the opposite of what the district court concluded and demonstrate the many inferences and credibility determinations the district court wrongly drew against Compass.  ECF 30 at 14-25.  And they do nothing to deny the myriad factual questions that must be answered before any trier of fact can determine whether Compass was on inquiry notice in 2014-16.  ECF 30 at 30-33; *see e.g.*, *Pilz v. FDIC*, No. 96-2243, 1997 U.S. App. LEXIS 16161, at *11-12 (4th Cir. July 1, 1997) (determining inquiry notice ordinarily is a fact question for the jury).  *At most*, the allegations in the Complaint reflect that Compass inquired into competition or solicitation (and relied on the advice of an unknown, conflicted inside co-conspirator), but not that any such competition or solicitation had been facilitated by the theft of trade secrets.

### 2.  DISCOVERY RULE

The Flywheel Defendants similarly give short shrift to the discovery rule. Contrary to their insinuation, there is no distinction between Maryland's discovery

14

rule and the DTSA's tolling language. *Compare Frederick Rd. Ltd. Pship*, 360 Md. 76, 95-96 (2000), *with* 18 U.S.C. § 1836(d).

The Flywheel Defendants cite *Poffenberger v. Risser*, 290 Md. 631, 637 (1981), for the proposition that plaintiffs "will be held guilty of bad faith and must suffer from [their] neglect" where they "fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him." ECF 39 at 26. Without any analysis, they summarily state, "That is the case here." For the reasons articulated in Compass's opening brief, that is certainly *not* the case here. ECF 30 at 25-33.

Citing *Dual* again, the Flywheel Defendants further assert the Supreme Court of Maryland affirmed dismissal of "an analogous state law trade secrets claim[]" on limitations at based on "the plaintiff's knowledge of the termination of a contract." ECF 39 at 26. As noted in Section I(A)(1), *supra*, *Dual* was decided on summary judgment, the trade secret claim there is hardly analogous to this case, and the plaintiff in *Dual* knew contemporaneously of the specific contract the defendant had terminated and immediately assumed. The same result is *not* warranted here.

### 3. **FRAUDULENT CONCEALMENT**

The Flywheel Defendants incorrectly argue "Compass does not identify any affirmative act by any Flywheel Defendant to avoid detection" and "Compass is forced to rely on the White Defendants' supposed misconduct." ECF 39 at 28. The

15

Complaint is replete with allegations of fraudulent concealment by one or more Flywheel Defendants. *See*, *e.g.*, JA16-91 ¶¶ 1, 6-7, 9-10, 191, 198, 200, 204-08, 308-12, 329, 344. As for the Flywheel Defendants' connection to the White Defendants' malfeasance, it is a relevant aspect of all Defendants' misconduct and collective fraudulent concealment. An entire section of the Complaint is titled, "Compass Discovers Michael and Daniel White are Connected to Miller, DiPaula, and Flywheel's Trade Secret Theft," which alleges the deep association between the White Defendants' secret fraudulent conduct and the Flywheel Defendants. JA63-65 ¶¶ 202-08. There are entire counts dedicated to this concealment (Counts X, XVI, and XXI). JA69, JA73, and JA75.

By failing to address fraudulent concealment in any way, especially where Compass expressly pled it and argued it in opposition to the motions to dismiss, the district court erred. *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (fraudulent concealment is "to be 'read into every federal statute of limitation'") (citation omitted).

## D.    THE DISTRICT COURT IMPROPERLY DISMISSED THE CLAIMS AGAINST ASCENTIAL

The Flywheel Defendants erroneously claim Compass "never alleged that Ascential purchased any 'stolen trade secrets from Flywheel'" and Compass only alleged that "Ascential 'acquired Flywheel.'" ECF 39 at 31. Not only is this a distinction without meaning, it also is incorrect. The Complaint expressly alleged

DiPaula, Miller, and Flywheel stole Compass's trade secrets and subsequently sold them to Ascential, *see*, *e.g.*, JA18 ¶¶ 6-8, and "Ascential either knew or should have known of the genesis of Flywheel's origins [i.e., the stolen trade secrets]." JA19 ¶ 9. The Complaint is replete with allegations advancing Compass's theory that DiPaula, Miller, Flywheel and the White Defendants all conspired to steal Compass's trade secrets and Ascential knew or purposefully disregarded as much when purchasing Flywheel. JA19-85 ¶¶ 10, 74, 199, 209-223, 228-48, 250-58, 260-76, 294, 302-03, and 309-12. Compass's contention that Ascential bought Flywheel and its stolen trade secrets (and continued to use them after being confronted by Compass) is a central theme of the Complaint.

Any attempt to argue that "there are no allegations that *Ascential* ever acquired or used Compass's trade secrets" is similarly unavailing. ECF 39 at 31 (emphasis in original). The Complaint plainly alleged Ascential purchased (and now owns) Flywheel and all of Flywheel's "assets" (including Compass's trade secrets in Flywheel's possession). JA65-66 ¶¶ 209-11. And the Complaint specifically alleged Flywheel was "re-branded . . . as an 'Ascential Company.'" JA65 ¶ 210. By acquiring Flywheel, Ascential acquired Compass's stolen trade secrets, which Ascential is alleged to have "know[n] or [had] reason to know. . . [were] acquired by improper means" by Flywheel and the other involved Defendants. 18 U.S.C. § 1839(5). Likewise, contrary to the Flywheel Defendants' argument, the Complaint

specifically alleged "Flywheel and Ascential have used and continued to use the misappropriated Compass trade secrets." JA69 ¶ 228. Furthermore, it is reasonable to infer Ascential would have conducted due diligence on Flywheel as a matter of corporate practice, which should have uncovered the misappropriation. There is no merit to the argument of Ascential being distinguishable from Flywheel.

The Flywheel Defendants further argue, incorrectly, that the RICO claims against Ascential fail because "[o]nly *theft* of trade secrets (not their use or disclosure) is a RICO predicate act." ECF 39 at 32 (citing 18 U.S.C. § 1832(a)). Section 1832 includes many other acts, such as concealing trade secrets; buying, receiving, or possessing trade secrets known to have been stolen or wrongfully obtained; or attempting or conspiring to do any of these acts. As set forth above, Ascential clearly is alleged to be possessing and concealing Compass's trade secrets, and it is further alleged to have conspired with the other Flywheel Defendants to do so.

Lastly, Ascential argues that dismissal of the claims against it is warranted for lack of personal jurisdiction. The district court disregarded that argument. For the reasons argued by Compass below, it remains of no avail.

## II. THE LEGAL THEORY OF A RICO ASSOCIATION-IN-FACT ENTERPRISE IS PROPERLY BEFORE THE COURT

The White Defendants improperly contend Compass waived its association-in-fact argument by not raising it below. The White Defendants briefed this very

theory in their initial motion to dismiss. SA11. In its Opposition, Compass

emphasized that "the Complaint may allege either a formal enterprise through which

the defendants committed their pattern of racketeering activities, or an 'association-

in-fact.'" SA38. Compass advanced the theory that the RICO enterprise was

accomplished through Compass.[4] Now, Compass is merely advancing another

interpretation of the facts in the Complaint to support the existence of an association-

in-fact. Under either theory, this Court is tasked with determining whether Compass

alleged sufficient facts to demonstrate the existence of an enterprise.

Even if deemed a "new" argument, "it is the fundamental province of [the

Fourth Circuit] to decide cases correctly, even if that means considering arguments

raised for the first time on appeal (or not raised by the parties at all)." *Meyers v.

Lamer*, 743 F.3d 908, 912 (4th Cir. 2014); *see also United States v. Under Seal*, 942

F.3d 159, 178 n.17 (4th Cir. 2019). This Court "regularly exercise[s] discretion to

---

[4] This also has been referred to by courts in this Circuit as an "innocent victim"
enterprise. *WW, LLC v. Coffee Beanery, Ltd.*, No. WMN-05-3360, 2012 U.S. Dist.
LEXIS 121347, at *45 (D. Md. Aug. 27, 2012); *Allstate Ins. Co. v. Weir*, No. 5:07-
CV-498-D, 2008 U.S. Dist. LEXIS 91270 (E.D.N.C. Nov. 10, 2008). "To state
a RICO claim based on an 'innocent victim' enterprise, a plaintiff must allege (1) a
sufficient nexus between the racketeering activity and the enterprise, and (2) that
defendants participated in the operation or management of the enterprise." *Id.*
Compass pled facts to support its "innocent victim" enterprise by asserting Daniel
and Michael (two of Compass's owners and former officers) used Compass's funds
to help build Flywheel and utilize Compass's trade secrets, among other
things. JA63, ¶ 204.

19

excuse a party's abandonment of an issue when the record provides an adequate basis to consider an alternative legal theory and when neither party is prejudiced by such consideration." *Manning v. Caldwell*, 930 F.3d 264, 271 (4th Cir. 2019) (collecting cases); *see also Seney v. Rent-A-Center, Inc.*, 738 F.3d 631, 635 n.3 (4th Cir. 2013).

The White Defendants rely primarily on two inapplicable cases to support their position. In *Greer v. Gen. Dynamics Info. Tech.*, 808 F. App'x 191 (4th Cir. 2020), the Fourth Circuit declined to address <u>a new cause of action</u> raised for the first time on appeal. In *Gilbert v. United States BATFE*, 805 F. App'x 198 (4th Cir. 2020), the plaintiffs <u>failed to file any response to the motion to dismiss</u> and, where the district court's ruling included multiple reasons for dismissal, the Court found there was no fundamental error or injustice. *Id*. at 202-03. Neither of these cases support the theory that Compass waived its association-in-fact argument.

Circumstances where this Court has regularly found a "new" legal argument may be considered on appeal are present here. The issue before the Court is whether Compass pled sufficient facts to sustain its RICO claims. Compass's purportedly "new" theory of association-in-fact relies upon an interpretation of the same operative facts in the same Complaint. It "is a purely legal issue that does not require additional fact-finding," because the record (i.e., Complaint) "'readily permit[s] evaluation' of [Compass's] theory." *Manning*, 930 F.3d at 271 (quotations omitted).

20

Whether Compass adequately pled an enterprise for its RICO claims is properly before the Court.  JA74-78; SA11; SA38.

The White Defendants cannot feign surprise, having argued this enterprise theory below.  There is no prejudice and, because this Court is to decide cases correctly, it should consider all possible legal theories in support of Compass's argument that it adequately pleaded a RICO enterprise.  When evaluating a Rule 12(b)(6) motion, courts determine whether the complaint pleads sufficient facts to sustain the asserted cause of action.  Evaluating the Complaint as argued by Compass on appeal is consistent with such duty and does not present any new facts that are not in the existing record.  The Court should determine whether Compass's allegations support a formal or association-in-fact enterprise.

## III.  THE DISTRICT COURT ERRED IN HOLDING COMPASS FAILED TO ALLEGE AN ENTERPRISE

The White Defendants argue Compass was required but failed to allege an enterprise comprising all Defendants. This argument fails. Compass specifically alleged that two RICO enterprises – one comprised of the White Defendants and the other of the Flywheel Defendants – joined forces with the common purpose of using Compass's trade secrets and information to harm Compass.  ECF 30 at 43 n.11.  The White Defendants' enterprise was formed, and racketeering activities began, before Compass employed the Flywheel Defendants.  The Flywheel Defendants then created their own sub-association-in-fact enterprise when they joined with the White

21

Defendants' in using Compass's stolen trade secrets and other information for economic gain. *Id*.

Courts have found the enterprise element satisfied where it was alleged that there existed an overarching enterprise comprised of "sub" enterprises, like here. *See, e.g., Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2021 U.S. Dist. LEXIS 67791, at *52 & n.13 (S.D. Cal. Apr. 7, 2021) (denying motion to dismiss RICO claims where plaintiff properly pled an "Overall Enterprise," and noting it need not address other alleged sub-enterprises at motion to dismiss stage); *Sihler v. Fulfillment Lab, Inc*., No. 3:20-cv-01528-H-MSB, 2021 U.S. Dist. LEXIS 67685, at *27 n.4 (S.D. Cal. Apr. 7, 2021) (holding because plaintiffs sufficiently pled a RICO claim based on one of its alleged enterprises, it need not address other alleged sub-enterprise at motion to dismiss stage); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Labs., Inc. (In re Celexa & Lexapro Mktg. & Sales Practices Litig.)*, 65 F. Supp. 3d 283, 293 (D. Mass. 2014) (concluding complaint should survive a motion to dismiss because plaintiff sufficiently pled at least some of the "Global Enterprise" and four sub-enterprises shared a common purpose).

In *WW, LLC,* the plaintiffs "alleged a number of different combinations of RICO Defendants and enterprises operated or managed by those Defendants," which the court confirmed was proper. *Id*. at *42 n.16 (noting "there is no authority that limits [plaintiffs'] ability to plead multiple theories of relief in support of their

claims"). Because the court found the allegations regarding at least one of those enterprises was sufficient to meet the FED. R. CIV. P. 8 requirements, the claim as a whole survived the motion to dismiss. *Id.* at *47 n.17. Where Compass's Complaint can be read to allege numerous combinations of the RICO enterprise, and where at least one of those iterations satisfies RICO's requirements, Compass's RICO claims should survive.

### A.   COMPASS PLED A COMMON PURPOSE

The White Defendants mischaracterize case law to assert Compass failed to state an actionable "common purpose." Because an association-in-fact is not a formal entity, a plaintiff is tasked with demonstrating "a 'common purpose' animating its associates, and this may be done by evidence of an 'ongoing organization, formal or informal,' of those associates in which they function as a 'continuing unit.'" *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1982) (quotations omitted). The Court in *Griffin*, upon which the White Defendants primarily rely, stated that individual members are tied together through an association-in-fact when "concepts of continuity, unity, shared purpose and identifiable structure" are demonstrated, by circumstantial evidence or otherwise. 660 F.2d at 1000. The question for courts is whether the alleged association-in-fact has a discrete existence or whether the individuals were acting alone (and solely in their own interests). *Id*. at 999-1000.

The White Defendants ignore the applicable pleading standard. The Court can only conclude that Compass "confuses the result of the alleged acts of racketeering with the common purpose of the association-in-fact," ECF 38 at 9, if the Court draws inferences in Defendants' favor, rather than Compass's. At bottom, the collective common purpose of the enterprise(s) is to harm Compass while also recognizing financial gain for the associations-in-fact members by misappropriating Compass's trade secrets. JA74, ¶¶ 250, 254.

The White Defendants also incorrectly assert Compass failed to allege facts to support the proposition that "the White Defendants acted in furtherance of a purpose completely against their interests[.]" ECF 38 at 10. Compass sufficiently alleged the White Defendants' common purpose of taking down Compass when, for example, in 2019 Michael and Daniel filed a lawsuit against Compass for judicial dissolution to transfer control of Compass from John as retribution for removing Michael and Daniel from their roles at Compass. JA55, ¶162-63. It was in Michael and Daniel's interest to destroy Compass because they had embezzled money from Compass, held a grudge against John, and had a financial stake in Flywheel.[5]

---

[5] Moreover, none of the cases the White Defendants cited support dismissal on this basis, and the only Fourth Circuit case cited for their "common purpose" argument is *United States v. Palacios*, 677 F.3d 234 (4th Cir. 2012), where this Court found an enterprise existed.

Compass's 80-page, 372 paragraph Complaint included numerous allegations to support the common purpose of the enterprise(s).  Thus, the White Defendants' argument about a lack of common purpose should fail.

### B.    <u>COMPASS PLED A CONTINUING UNIT</u>

To satisfy the element of a "continuing unit," Compass must show only "some level of coordination" between the members.  *See, e.g.*, *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 537 (D. Md. 2019).  The argument that Compass failed to allege an ongoing relationship between the White Defendants, DiPaula, and Miller subsequent to 2014 is belied by the facts alleged in the Complaint and reasonable inferences drawn therefrom.  As the White Defendants acknowledged (ECF 38 at 14), Daniel wrote multiple checks to DiPaula "to support their funding and operation of Flywheel."  JA63-64, ¶¶ 203-07.  It is reasonable to infer the White Defendants have maintained this investment in Flywheel since 2015, as there is no allegation the investments have been returned.  *Id*.  Also, in 2014 and again in 2016, Daniel (as Compass's General Counsel) encouraged John not to pursue legal action against the Flywheel Defendants.  JA41, 43, ¶¶ 81, 89.  And, at the end of 2018, when Ascential purchased Flywheel and Daniel's and Michael's employment terminated, Michael and DiPaula exchanged phone calls.  JA44-45, ¶ 94.  Thus, it is reasonable to infer the enterprise unit was continuing through that time.

To the extent the Court is disinclined to find a continuing unit between the joint sub-enterprises, the Court can still find a continuing unit among the White Defendants (which does not appear to be disputed).

### C.    COMPASS PLED SEPARATENESS OF THE ENTERPRISE AND A PATTERN OF RACKETEERING ACTIVITY

The White Defendants claim Compass failed to allege the separateness of the enterprise from the pattern of racketeering activity.  This is not true and, to reach this conclusion, would require ignoring well-pled facts in the Complaint.  The White Defendants' argument rests solely on the proposition that the enterprise members must "collectively" be engaged in legitimate business activity and, according to the White Defendants, "the defendants engaged in legitimate business activities *individually* . . . [but not] in association together with the other members[.]"  ECF 38 at 17 (emphasis in original).

This Court's decision in *United States v. Tillett*, 763 F.2d 628 (4th Cir. 1985), is instructive, but not for the reasons stated by the White Defendants.  In *Tillett*, this Court found that because legitimate business operations occurred in intervals between the alleged racketeering activity, such activity demonstrated "the organization existed separate and apart from the pattern of racketeering activity in which it was engaged at any particular moment."  *Tillett*, 763 F.2d at 632 (citing *Griffin*, 660 F.2d at 999).  Nothing in *Tillett* supports the position that all enterprise members, together and at the same time, must "collectively" be engaged in the same

26

legitimate business activities. Such an argument mischaracterizes applicable law. The Complaint here includes allegations that demonstrate all individual Defendants were engaged in legitimate business activity throughout their respective employments with Compass in intervals between the racketeering activity. *See, e.g.*, JA21-51, ¶¶ 16-20, 45, 47, 52, 63, 92, 144-45.

### D.    COMPASS PLED A PATTERN OF RACKETEERING RELATED TO GEORGE WHITE

The White Defendants claim Compass failed to allege a pattern of racketeering related to George because there is nothing in the Complaint to substantiate the IT lockout took more than one mouse click. That suggestion, however, requires the Court to draw inferences against Compass. The Complaint alleged "George intentionally and maliciously cut off Compass access to employee email accounts with the compassmarketinginc.com domain, Microsoft, QuickBooks, and other business records and accounts." JA37, ¶ 149. Nothing from this allegation suggests George's actions were an isolated act. It is reasonable to infer that George engaged in separate acts to terminate access to multiple accounts. To find otherwise would disregard the standard applicable to motions to dismiss.

Even if this Court were to find Compass failed to allege a pattern of racketeering as to George, it should find the lower court abused its discretion by

failing to grant leave to amend the Complaint as to George.[6]  Alternatively, it should affirm the lower court's dismissal of George only because the existence of an enterprise and a pattern of racketeering clearly were pled as to Michael and Daniel. George's involvement is not necessary to establish an enterprise.

## IV.    **COMPASS SHOULD HAVE BEEN GRANTED LEAVE TO AMEND**

Lower courts have abused their discretion by failing to afford a plaintiff leave to amend, even if not requested.  *See, e.g., Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("It does not matter whether [] a plaintiff seeks leave to amend.  We have instructed . . . a district court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Nix v. Welch & White, P.A.*, 55 F. App'x 71 (3d Cir. 2003) (same).  Appellate courts, including this Circuit, also routinely find an abuse of discretion where a lower court does not grant leave to amend when it is requested, as was the case here.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999); *Farmers All. Ins. Co. v. Commercial Union Ins. Co.*, No. 91-7125, 1992 U.S. App. LEXIS 17705 (10th Cir. July 29, 1992); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988).  Compass sought

---

[6] An amendment would include, for example, consistent with a Maryland circuit court's recent finding, that George and Michael maintained access to Compass's network following their separation from employment and the IT lockout. *See White v. Bateman*, Case No. C-02-CV-21-000778 (Cir. Ct. Anne Arundel County, Maryland).  Such access suggests ongoing efforts to conceal information from Compass, among other things.

leave to amend the Complaint but, even if it had not, particularly when leave to amend had not previously been granted, the lower court abused its discretion by failing to do so.

Respectfully submitted,

Dated: September 11, 2023       /s/ Stephen B. Stern
                                        Stephen B. Stern

                                        /s/ Michael J. Marinello
                                        Michael J. Marinello

                                        /s/ Meagan C. Borgerson
                                        Meagan C. Borgerson

                                        KAGAN STERN MARINELLO & BEARD, LLC
                                        238 West Street
                                        Annapolis, Maryland 21401
                                        Tel (410) 216-7900
                                        stern@kaganstern.com
                                        marinello@kaganstern.com
                                        borgerson@kaganstern.com

                                        *Counsel for Appellant*
                                        *Compass Marketing, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*6,497*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>September 11, 2023</u>          <u>/s/ Stephen B. Stern</u>
                                          Stephen B. Stern

                                          <u>/s/ Michael J. Marinello</u>
                                          Michael J. Marinello

                                          <u>/s/ Meagan C. Borgerson</u>
                                          Meagan C. Borgerson

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 11th day of September, 2023, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel as registered CM/ECF users.

<u>/s/ Stephen B. Stern</u>
Stephen B. Stern

<u>/s/ Michael J. Marinello</u>
Michael J. Marinello

<u>/s/ Meagan C. Borgerson</u>
Meagan C. Borgerson