No. 23-1324

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

―――――――

COMPASS MARKETING, INC.,

*Petitioner-Appellant*

v.

FLYWHEEL DIGITAL LLC; JAMES COLUMBUS DIPAULA, JR.;
PATRICK MILLER; DANIEL J. WHITE; MICHAEL WHITE;
GEORGE WHITE; ASCENTIAL PLC,

*Respondents-Appellees.*

―――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND (BALTIMORE)
NO. 1:22-CV-00379-GLR
HON. GEORGE J. RUSSELL, III, CHIEF DISTRICT JUDGE

―――――――

## PETITION FOR EN BANC REHEARING, OR ALTERNATIVELY, FOR PANEL REHEARING

―――――――

STEPHEN B. STERN
MICHAEL MARINELLO
MEAGAN G. BORGERSON
KAGAN STERN MARINELLO
 & BEARD, LLC
238 West Street
Annapolis, MD 21401
(410) 216-7900

ROD J. ROSENSTEIN
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
rrosenstein@kslaw.com

*Counsel for Petitioner-Appellant Compass Marketing, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

RULE 35(b) STATEMENT ....................................................................1

INTRODUCTION ..................................................................................2

ARGUMENT .........................................................................................4

I.    En Banc Rehearing Is Warranted To Decide Whether Employee Departures Place An Employer On Inquiry Notice As To Potential Fraud And Trade Secret Theft. ...................4

II.    Panel Rehearing Is Warranted For Two Reasons. ..........................9

    A.    Compass Exercised Due Diligence ............................................9

    B.    Compass's Claim Against Ascential Is Not Based On Successor Liability. ............................................................11

CONCLUSION .................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Edmonson v. Eagle Nat'l Bank,*
 922 F.3d 535 (4th Cir. 2019) ........................................................................ 3, 9

*Hall v. DIRECTV, LLC,*
 846 F.3d 757 (4th Cir. 2017) ............................................................................ 9

*Meyer v. Seidel,*
 89 F.4th 117 (2d Cir. 2023) ........................................................................... 4, 6

*Rotella v. Wood,*
 528 U.S. 549 (2000) ...................................................................................... 2, 4

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,*
 71 F.3d 119 (4th Cir. 1995) ................................................................ 5, 6, 8, 11

*United States v. Carolina Transformer Co.,*
 978 F.2d 832 (4th Cir. 1992) ........................................................................... 12

**Rules**

Fed. R. App. P. 32(a)(5) ...................................................................................... 14

Fed. R. App. P. 32(a)(6) ...................................................................................... 14

Fed. R. App. P. 35(a)(2) ........................................................................................ 1

Fed. R. App. P. 35(b)(2)(A) ................................................................................. 14

Fed R. App. P. 40(a) .............................................................................................. 2

4th Cir. Loc. R. 32(a)(7)(f) .................................................................................. 14

4th Cir. Loc. R. 35-4(a) ....................................................................................... 14

4th Cir. Loc. R. 40-1(a) ................................................................................... 2, 14

# RULE 35(b) STATEMENT

Rehearing en banc is warranted because the panel decision involves a question of exceptional importance. Fed. R. App. P. 35(a)(2). This question merits en banc review:

> When several company employees go to work for a competitor, does that put a company on inquiry notice of trade secret misappropriation and racketeering?

**INTRODUCTION**

Petitioner Compass Marketing, Inc. seeks rehearing and rehearing en banc because the panel overlooked material factual and legal matters and the proceeding involves a question of exceptional importance. Fed. R. App. P. 40(a); 4th Cir. Loc. R. 40-1(a).

Rehearing en banc is warranted to decide whether the departure of some company employees to work for a competitor puts the company on notice about potential violations of the Racketeer Influenced & Corrupt Organizations Act (RICO) and the Defend Trade Secrets Act (DTSA) involving those employees. The Supreme Court is clear that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock" on statutes of limitations. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Yet the panel wrongly held that the clock began to run on Compass's claims for fraud and trade secret theft simply because a few employees had left to work for a competitor and, as a result, one client had "ceased communicating with" the company. Op. 4.

That ruling defies common sense and should not be left in place. There is no reason to assume that *every* time employees leave a company to work for a competitor and take one customer with them, fraud or trade

secret theft is probably afoot. And requiring the tens of thousands of companies in this Circuit to presume the worst about their former employees—as the panel decision does—promises to sour otherwise beneficial relations. This important issue needs rehearing en banc.

Alternatively, panel rehearing is warranted to correct two clear legal errors. The first is that the panel declined to apply the fraudulent concealment doctrine because, in its view, Compass "did not exercise due diligence." Op. 4–5. But the panel overlooked that when Compass's CEO became aware that two former employees might be violating their non-compete and non-solicitation agreements, he diligently responded by consulting with Compass's General Counsel. That the General Counsel was a co-conspirator who misled the CEO and told him not to take further action, *see* JA41, ¶81; JA43, ¶89, proves there was fraudulent concealment, which tolls the statute of limitations, *see Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019).

The second issue that warrants panel rehearing is that the panel erred in holding that Compass's claim against Ascential is based on successor liability. Op. 4. In fact, the Complaint alleges direct liability—*i.e.*, that Ascential "elected to act in concert with Flywheel to further the

misappropriation of Compass's trade secrets and proprietary business know how," JA19, ¶10, and "used … the misappropriated Compass trade secrets." JA69, ¶228.

Rehearing en banc, or at minimum panel rehearing, is warranted.

## ARGUMENT

### I. En Banc Rehearing Is Warranted To Decide Whether Employee Departures Place An Employer On Inquiry Notice As To Potential Fraud And Trade Secret Theft.

The panel erred in holding that the departure of a few former employees to work for a competitor *automatically* puts a company on notice that it has been defrauded and its trade secrets have been stolen. Op. 4. That rule cannot be squared with controlling precedent or common sense, much less the factual allegations in the Complaint. The en banc Court should rehear this important issue, which would affect how tens of thousands of companies treat their former employees and clients.

The Supreme Court has been clear on this point: "[I]n applying a discovery accrual rule, we have been at pains to explain that *discovery of the injury*, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555 (emphasis added). That means "the circumstances must suggest ... that it is *probable—i.e.,* more likely than not" that the injury occurred. *Meyer v. Seidel,* 89 F.4th 117, 136 (2d Cir.

4

2023). As this Court has long held, the clock does not start at all if the plaintiff "was not (and should not have been) aware of facts that should have excited further inquiry on its part." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 128 (4th Cir. 1995).

The panel broke from this consistent line of precedent. The injury at issue is trade secret misappropriation. The panel did not identify the discovery of the injury, or even point to any facts that, in its view, should have excited further inquiry. It instead held that Compass "should have discovered its ... claims against the Flywheel Defendants by 2016" because two employees "resigned in 2014," one client "ceased communicating with Compass," and "several more employees resigned" in 2016. Op. 4.[1] In other words, the panel adopted a per se rule that the decision of a few employees to work for a competitor and to take one client with them placed Compass on inquiry notice that it had been defrauded and its trade secrets misappropriated.

---

[1] While the panel also noted that one Defendant "wrote a blog post and presented at a conference using Compass's asserted trade secrets" in 2015, Op. 4, that has no bearing on the notice issue because Compass learned about those materials only in 2020, JA57, ¶184.

5

That ruling defies common sense. That some employees left a company to go work for a competitor and one client took its business elsewhere does *not* "excite further inquiry" that they might have defrauded the company or stolen its trade secrets. *See Supermarket,* 71 F.3d at 128. Every day, employees leave companies and customers change vendors. Such routine occurrences are not actionable wrongs and do not suggest any wrongdoing, much less make it "probable … and not merely possible" that any former employee committed fraud or stole the former employer's trade secrets. *See Meyer*, 89 F.4th at 136.

The panel's rule also will have severely detrimental effects on how companies treat former employees and customers. There are tens of thousands of companies in the Fourth Circuit, and no doubt most strive to maintain good relations with their former employees. Under the panel's rule, however, companies will now be required to poison those relationships by assuming the worst: Every employee departure will now prompt an investigation into possible fraud and trade secret theft, perhaps including adversarial interviews and forensic investigation into the employee's handling of company documents.

It would be particularly unjust for the en banc Court to allow that rule to stand in this case, because the trade secret misappropriation was only one aspect of a years-long series of fraudulent actions that preceded and followed it. The complaint alleges that the Defendants engaged in severe and persistent fraud and wrongdoing by the Defendants that lasted many years, including that they:

- fraudulently added family members to Compass's payroll, then created fictitious spreadsheets to cover up those "ghost employees," JA47–48, ¶¶108–118;

- fraudulently "reimburse[d] [themselves] for personal loans that were never made to the company," JA49, ¶126, which one Defendant admitted was a "BS loan," JA51, ¶142;

- stole "virtually all of Compass's trade secrets" in 2014, when two Defendants left Compass to launch Flywheel, JA39, ¶76, then later poached additional employees who stole "electronic or hard copy files that memorialized" proprietary information about "maximizing sales on Amazon," JA42, ¶85.

The panel's ruling has a perverse consequence: If the lengthy and complex fraud scheme had not expanded to include trade secret

misappropriation, Compass's RICO claim could proceed. Because a few employees resigned in the middle of the lengthy conspiracy, however, the panel ruled that Compass should have uncovered the trade theft and by failing to do so forfeited its right to pursue its RICO claim for fraud that *had not yet occurred*, in furtherance of a scheme that was not discovered for at least four more years. The panel's ruling that Compass should have discovered the trade secret theft by 2016 therefore has the disproportionate effect of immunizing the Defendants from RICO liability for all subsequent fraud.

But nothing in the Complaint shows that Compass was on notice of the probability of the above injuries. According to the panel's inference, the decisions by employees to work for a competitor and of one customer to follow them placed Compass on notice of the brazen and rampant fraud and misappropriation of trade secrets. But the *allegations* show that Compass was not on notice: Its General Counsel expressly told the CEO that the competitor did *not* have Compass's trade secrets. JA41, ¶81;

JA65, ¶208. The panel's ruling is plainly wrong and urgently requires correction by the en banc Court.[2]

## II. Panel Rehearing Is Warranted For Two Reasons.

Alternatively, panel rehearing is warranted to correct two clear errors in the panel's opinion: the panel overlooked allegations of fraudulent concealment by the conspirators and misconstrued Compass's theory of liability against Ascential.

### A. Compass Exercised Due Diligence.

The panel clearly erred in holding that the fraudulent concealment doctrine does not apply here because Compass "did not exercise due diligence." Op. 4–5. "[T]he adequacy of a plaintiff's diligence is generally not amenable to resolution on the pleadings." *Edmonson*, 922 F.3d at 549.

---

[2] The panel also erroneously assumed that Compass could have discovered the trade secret theft and racketeering through the exercise of reasonable diligence. *See Supermarket*, 71 F.3d at 128 (holding that "if [a] reasonable further inquiry would not have revealed the basis for the … claim, the plaintiff's claim is not time-barred"). Like the district court, the panel wrongly drew inferences Compass by theorizing that it could have discovered in 2016 that Miller wrote a blog post and presented at a conference using Compass's trade secrets. Op. 4. But there is no evidence that those materials were publicly available in 2016, and the Court must draw all inferences in favor of Compass. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). The Court therefore must presume that the blog post and information about the conference were not available before Compass discovered them in 2020.

9

And the panel should *not* have resolved that issue as a matter of law here because Compass alleged actions that demonstrate its diligence in investigating potential wrongdoing.

Specifically, when Compass's CEO became aware that co-conspirators James DiPaula and Patrick Miller *might* be violating their non-compete and non-solicitation agreements, he diligently consulted Compass General Counsel ("GC") Daniel White for advice. JA41, ¶81. Unbeknownst to the company, the GC was secretly embezzling money from Compass and funding his co-conspirators' efforts to launch Flywheel. JA63–65, ¶¶202–208. The CEO's diligence did not expand into a further inquiry because the GC, a co-conspirator, breached his fiduciary duty to Compass by falsely advising the CEO that Compass should not undertake any further action. JA41, ¶81; JA65, ¶208.

In furtherance of the conspiracy, the GC fraudulently concealed his co-conspirators' wrongdoing by falsely telling Compass that it should not take further action because its "trade secrets and proprietary information and know how provided Compass with such a substantial competitive advantage" over Flywheel, when he knew that was not true. JA41, ¶81; JA43, ¶89. The GC thereby concealed from the CEO and Compass the

10

truth—that Compass had no competitive advantage because Flywheel was misappropriating its intellectual property.[3]

Fraudulent concealment, which is "read into every federal statute of limitations," tolls the statute of limitations when it prevents the plaintiff from discovering its injury. *Supermarket*, 71 F.3d at 122. Compass had no reason to know that the GC concealed his illegal conduct or secretly acted to promote the interests of his Flywheel co-conspirators. As a result, it was clear error to hold that the fraudulent concealment doctrine does not apply.

The panel should therefore grant rehearing to correct this error and reverse the decision below.

### B. Compass's Claim Against Ascential Is Not Based On Successor Liability.

The panel also clearly erred in holding that Compass's complaint against Ascential is time-barred because it is based on successor liability and does not allege that Ascential misappropriated trade secrets. Op. 4.

---

[3] In another act of concealment, Miller removed Compass's branding from a 2015 PowerPoint presentation so he could falsely pass it off as a Flywheel product. JA60, ¶191.

In fact, Compass's complaint *does* allege that Ascential misappropriated Compass's trade secrets, and it is not premised on successor liability at all. It alleges that Ascential "elected to act in concert with Flywheel to further the misappropriation of Compass's trade secrets and proprietary business know how," JA19, ¶10, and "used … the misappropriated Compass trade secrets," JA69, ¶228. That is a theory of direct liability based on Ascential's conduct *after* acquiring Flywheel in 2018. The claim, therefore, cannot be time-barred on this basis.

The panel mistakenly relied on inapposite precedent involving an asset purchase. Op. 4; *see United States v. Carolina Transformer Co.,* 978 F.2d 832, 838 (4th Cir. 1992) ("The settled rule is that a corporation which acquires the assets of another corporation does not take the liabilities of the predecessor corporation from which the assets are acquired unless one of four generally recognized exceptions are met…."). Ascential did not purchase Flywheel's assets. The Complaint alleges that Ascential acquired Flywheel as a going concern, tied its purchase price to Flywheel's future performance, and re-branded it as an Ascential company. JA19, ¶9; JA65, ¶210.

Accordingly, panel rehearing is warranted on this issue.

## CONCLUSION

The Court should rehear this case en banc and reverse the district court's ruling. Alternatively, the panel should rehear this case and reverse the district court's ruling.

July 17, 2024

Respectfully submitted,

*/s/Rod J. Rosenstein*

STEPHEN B. STERN
MICHAEL MARINELLO
MEAGAN C. BORGERSON
KAGAN STERN MARINELLO
& BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(410) 216-7900

ROD J. ROSENSTEIN
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
rrosenstein@kslaw.com

*Counsel for Petitioner-Appellant Compass Marketing, Inc.*

# CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the length limitations set forth in Fed. R. App. P. 35(b)(2)(A) and Circuit Rules 35-4(a) and 40-1(a), because it contains 2,267 words, as counted by Microsoft Word, excluding the items that may be excluded under Rule 32(a)(7)(f).

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared using Microsoft Word in Century Schoolbook 14-point font.

July 17, 2024            */s/ Rod J. Rosenstein*
                                         ROD J. ROSENSTEIN
                                         Counsel for Compass Marketing, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, I electronically filed the following document(s) with the Clerk of the Court by using the Court's CM/ECF system:

**PETITION FOR EN BANC REHEARING, OR ALTERNATIVELY, FOR PANEL REHEARING**

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

July 17, 2024         */s/ Rod J. Rosenstein*
                      ROD J. ROSENSTEIN
                      Counsel for Compass Marketing, Inc.